Christina McCABE

v.

The VILLAGE VOICE, INC., et al.

Civ. A. No. 81–1415.

United States District Court, E.D. Pennsylvania.

Nov. 1, 1982.

Susan I. Schulman, Spencer M. Wertheimer, Philadelphia, for plaintiff.

Eugenie C. Gavenchak, Neal Goldman, New York City, for defendants.

## MEMORANDUM and ORDER

JOSEPH S. LORD, III, Senior District Judge.

In this diversity action, plaintiff claims damages for libel and invasion of privacy.[1] The defendants have moved for summary judgment on all counts. I heard oral argument on October 4, 1982. I have concluded that defendants have sustained their burden of demonstrating that as to the libel and false light claims, there is no genuine issue of material fact. I will deny defendants' motion as to the publicity given to private life claim.

### I. Statement of the Facts

Plaintiff Christina McCabe is a Pennsylvania citizen. Defendant Donald Herron is a professional photographer who is a citizen

---

1. The plaintiff's complaint also includes a separate negligence count. In this case, there can be no independent action for negligence. Any negligence on the part of the defendants as to the truth or falsity of the material published is subsumed in the claims for libel and false light. Any negligence with regard to plaintiff's consent to publication is actionable under publicity given to private life. Since no other negligence on the part of the defendants is alleged in the complaint, there is no basis for an independent negligence action. To the extent the plaintiff's claim states such an action, the motion for summary judgment is granted.

of New York. News Group Publications, Inc. is incorporated under Delaware law with its principal place of business in New York City. It is the successor by merger to The Village Voice, Inc. News Group is the corporate publisher of *The Village Voice,* a weekly newspaper with a general circulation in excess of 144,000 copies.

At issue in this case is the publication by *The Village Voice* of a nude photograph taken by Donald Herron of Christina McCabe in a bathtub. The photograph appeared in the April 9–15, 1980 issue of *The Voice* as part of a feature called "Centerfold." This particular week Centerfold focused on the work of Mr. Herron. It presented a series of photographs consisting of individuals in bathtubs, most of whom were partially or totally nude.

The photograph was taken by Mr. Herron in San Francisco sometime in 1977 or the first half of 1978.[2] At the time, Herron was working on development of his series of portraits.

Herron and McCabe had not met before the day he photographed her. According to McCabe's deposition, she met him at Fey Wey Studio, a San Francisco art gallery. Fey Wey was owned by Robert Opel and Anthony Rogers. Opel was a friend of McCabe's. She went to the gallery to visit him and, upon arrival, was introduced to Herron.

McCabe agreed to have her picture taken by Herron. After the photograph was taken, she asked Herron what his intentions were. He said that "he wanted to publish a book." (McCabe deposition, 51). She said nothing in response to his statement.[3]

There was no further contact between Herron and McCabe until after initiation of this lawsuit. Early in 1980, Herron contacted the Centerfold editor of *The Voice,* Guy Trebay. Herron asked if *The Voice* might be interested in publishing his work. A meeting was arranged where Trebay could examine Herron's photographs. Trebay told him he liked the photographs and asked if Herron had releases. (Trebay deposition, 21). Herron said he did.

About a month later, Herron dropped off a set of photographs and releases at Trebay's office. The releases were form model release agreements. One was labeled, in print across the top, "Christina McCabe—Model." On the line labeled "Model Signature" the letters "Crys" were written and crossed out, followed by the correct spelling of the plaintiff's name. The creator of the signature is unknown, but it is conceded that it was neither Herron nor plaintiff. Where the model's address is to be provided, "1287 Howard Street, San Francisco" had been entered. This is the address of Fey Wey Studio.

Trebay selected the photographs he was interested in, including the plaintiff's, and attempted to pair the releases provided with the pictures he had chosen. He found the release that corresponded to the photograph of McCabe. While he recalled seeing a signature on the line designated "Model Signature," he did not recall reading that signature. (Trebay deposition, 29–30). In addition, he did not recall seeing letters that were crossed out on the fact of the model release for Christina McCabe. (Trebay deposition, 40). McCabe's release was not specifically discussed with any other members of *The Voice* staff before publication.

Trebay attempted to confirm the releases for some of the subjects of the photographs. He stated that he called the subjects he knew to confirm the authenticity of their releases.[4] In the case of the plaintiff, Tre-

---

**2.** The complaint states the photograph was taken June 15, 1978. At her deposition, McCabe testified the photograph was taken in early 1977. Mr. Herron stated that the photograph was taken on January 20, 1978. Resolution of this dispute is not necessary at this time as it has no bearing on the disposition of defendants' motion.

**3.** Plaintiff's version of her exchange with Herron is disputed. However, the dispute is immaterial to the libel and false light claims.

**4.** Q. Did you in fact try to confirm the releases that you already had for those photographs?
A. Such ones as I could.

bay attempted to locate a phone number by calling San Francisco directory assistance. He was unsuccessful. The individuals who were contacted by Trebay confirmed the releases.

In April, 1980, the Centerfold feature of Donald Herron's twenty-three photographs, including that of Christina McCabe, appeared in *The Village Voice.* Underneath her photograph was a caption reading, "Christina McCabe—Model." McCabe learned of the publication about a week after it was on the market. She filed this action April 10, 1981 claiming $7,000,000 in damages for libel and invasion of privacy. Plaintiff's invasion of privacy claim has two distinct components: publicity placing a person in a false light and publicity given to private facts.[5]

## II. Libel and False Light

■ A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 442, 273 A.2d 899, 904 (1971). It is for the court to make an initial determination of whether the communication at issue is capable of a particular meaning and whether that meaning is defamatory. *Corabi; Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264 (3d Cir.1980).

At this point, I emphasize the importance of distinguishing between libel and publicity given to private facts. The discussion in this section is only concerned with libel.

■ The meaning of an allegedly libelous communication must be determined from the context. *Corabi,* 444, 273 A.2d 906.[6] "The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average person among whom it is intended to circulate." *Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936). In this case, considering the totality of the printed material, including the title of the feature "Centerfold," the accompanying photographs, the plaintiff's photograph, and the designation "Model", I find the publication incapable of defamatory meaning.[7] Neither the plaintiff's photograph, nor the entire feature, is obscene or even suggestive. Nothing in the presentation suggests that the plaintiff is sexually promiscuous. While some readers might conclude that the plaintiff was supportive of avant garde photography, this communication cannot support a defamation claim. "If the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication." *Sarkees v. Warner-West Corp.,* 349 Pa. 365, 369, 37 A.2d 544, 546 (1944). A communication may be libel per se if "the common understanding of mankind takes hold of the published words, and at once, without difficulty or doubt, applies a libelous meaning to them." *Hayes v. Press Co.,* 127 Pa. 642, 648, 18 A. 331, 332 (1889). The difficulty with plaintiff's case is that there are no published words for the common understanding of mankind to take hold of so that there is not even any libel. But even if by some tortuous reasoning a libel could be found, it would not be libelous *per se, Hayes,* and plaintiff would still fail.

■ Pennsylvania law requires that in a defamation action where the defamation is not actionable *per se,* the plaintiff has the

---

Q. Do you recall which ones you did confirm?
A. Not off-hand.
Q. How did you go about trying to confirm those releases that you could confirm?
A. When I knew the subjects, I called them. Trebay deposition, 36.

**5.** The parties and this court agree that the law governing this diversity action is that of Pennsylvania.

**6.** I therefore reject the defendants' contention that the plaintiff's claim for libel is predicated solely upon the designation "Model."

**7.** I discount the possibility that some readers of *The Village Voice* may consider defamatory the suggestion that they bathe.

burden of pleading and proving special damages. *Fogel v. Forbes,* 500 F.Supp. 1081 (E.D.Pa.1980); *Bogash v. Elkins,* 405 Pa. 437, 440, 176 A.2d 677, 678 (1962). Plaintiff has failed to meet her burden or proving special damages.[8]

Plaintiff's claim for invasion of privacy under a false light theory is closely allied to her claim for libel. Pennsylvania has adopted § 652E of the Restatement (Second) of Torts. *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133 (1974). A necessary element of a plaintiff's false light claim is that "the false light in which the other was placed would be highly offensive to a reasonable person." Restatement § 652E(a). I have difficulty in discerning the "false light" in which plaintiff was placed, if any. She is photographed in a bathtub. A pictorial suggestion that plaintiff bathes when in fact she does not might be false but would not be offensive to a reasonable person, although plaintiff herself might be. For the reasons discussed above, I find the publication in question incapable of meeting this standard. It is not susceptible through fair interpretation to a meaning which could be highly offensive to a reasonable person.[9]

### III. Publicity Given to Private Life

Pennsylvania has adopted the Restatement (Second) of Torts as it governs publicity given to private life. *Vogel, supra.* Section 652D defines the elements of this tort. A defendant is subject to liability if it gives publicity to a matter concerning the private life of another and if the matter publicized is of a kind that "would be highly offensive to a reasonable person" and "is not of legitimate concern to the public". Restatement § 652D. The defendants apparently concede that publication of a nude photograph of a private individual would normally meet the standards of this section. Instead, the defendants assert that McCabe was reasonably understood to have consented to the publication of her picture and that publication was of legitimate concern to the public.[10]

### A. Consent

Consent is a willingness for conduct to occur. Restatement (Second) of Torts § 892. Conduct which is reasonably understood by another to be intended as consent is as effective as consent in fact. The record at this time cannot support a finding that plaintiff in fact consented to publication of her photograph in *The Voice.* The defendants' claim that they were reasonable in believing she had consented warrants further examination. Herron and *The Voice* drew their conclusions concerning the plaintiff's consent from different sources. Herron depends on his disputed conversation with McCabe at the time of the photography session; *The Voice* relies on the signed releases presented to it by Herron. I consider their claims separately.

Taken in the light most favorable to the plaintiff, the conversation with Herron provided a reasonable basis for an assumption of consent for a photograph to appear in a book. Publication of the photograph in *The Village Voice* exceeded this consent. Conduct in excess of that consented to is not protected by the consent. Restatement § 892A(4). McCabe therefore retains her right of action against Herron.

---

**8.** The plaintiff contends that her testimony regarding the behavior of long-time friends and associates and the deterioration of her relationship with her boyfriend constitute pleading special damages. I reject this contention. "Special damages ... means actual and concrete damages; damages capable of being estimated in money, ... established by specific instances, such as actual loss due to withdrawal of trade of particular customers .... And the statement of claim must allege such damages with certainty and particularity." *Shaines v. R.G. Dunn and Co.,* 8 Pa.Dist. & County, 597, 598 (Phila.County, 1927).

**9.** I note again plaintiff's failure to plead special damages. The policies which support the imposition of the special damages requirement in actions for defamations also support a similar requirement in actions for false light. See Restatement (Second) of Torts, § 652E, comment e.

**10.** I am not persuaded that a woman taking a bath is newsworthy. Many people engage in that practice daily and the media do not consider it worth reporting publicly.

■ The defendant bears the burden of establishing consent of the plaintiff. A jury could find that *The Voice* had failed to meet its burden of showing that it was reasonable in relying on the form provided by Mr. Herron, supposedly a "model release" from Christina McCabe. Guy Trebay, editor of the Centerfold feature, testified that he received the release from Herron. He did not recall having read the signature on the release, or having noted the crossed out letters which preceded the signature. A reasonable jury could infer from this that Mr. Trebay failed to read the signature on the release form. In any case, a jury could find that the peculiar condition of the release form at issue made reliance on the form alone unreasonable. It could also find that Mr. Trebay's effort to confirm the release, through a single phone call to San Francisco directory assistance, was inadequate to justify reasonable reliance. Trebay did not specifically discuss the plaintiff's release with any other members of *The Voice* staff. In view of these facts and inferences, taken in the light most favorable to the plaintiff, the jury could find that the defendant was unreasonable in its assumption that the plaintiff had consented to publication.

### B. *Newsworthiness*

■ Publication of newsworthy information is privileged. This circuit has recognized "the interest of the public in the free dissemination of the truth and unimpeded access to news is so broad, so difficult to define, and so dangerous to circumscribe, that courts have been reluctant to make such factually accurate public disclosures tortious". *Jenkins v. Dell Publishing Co.,* 251 F.2d 447, 450 (3d Cir.1958). However, the privilege to publish newsworthy information is not limitless.

■ While *Jenkins* established that "once the character of an item as news is

established, it is neither feasible nor desirable for a court to make a distinction between news for information and news for entertainment." *Jenkins,* 451. There remains the initial determination that an item is newsworthy. The publication at issue imparted no information to the reading public. At issue here is the inclusion of one particular photograph in the Centerfold. I am not convinced that the photograph of Christina McCabe is newsworthy.[11] It serves no "legitimate purpose of disseminating news", *Aquino v. Bulletin Co.,* 190 Pa.Super. 528, 540, 154 A.2d 422, 429 (1959), *quoting from Sutton v. Hearst Corp.,* 98 N.Y.S.2d 233, 234–35, 277 App.Div. 155 (1950), and needlessly exposes aspects of the plaintiff's private life to the public.

### IV. *Conclusion*

In summary, I will grant the defendants' motion for summary judgment on the libel and false light claims. I will deny the motion as to the publication of private facts claim.[12]

---

11. See n. 10, *supra.*

12. Defendants have also moved for summary judgment on the plaintiff's claim for punitive damages. To the extent the plaintiff claims punitive damages with respect to the libel and

false light claims, that motion is granted; to the extent the plaintiff claims punitive damages for publication of private facts, the motion for summary judgment is denied.