MARY R. TROPEANO vs. THE ATLANTIC MONTHLY COMPANY
& another.

Suffolk.  November 7, 1979. — February 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, & ABRAMS, JJ.

*Publication of Name or Picture.  Libel and Slander.  Privacy.*

A magazine's unauthorized use of an individual's photograph as an illustration to an article did not violate G. L. c. 214, § 3A.  [746-751]

A judge properly dismissed a libel action based on a magazine's use of a photograph depicting four well-dressed young women, including the plaintiff, as an illustration to an article dealing with modern sexual and social mores where the publication was not defamatory on its face and the plaintiff did not plead any defamatory innuendo.  [751]

CIVIL ACTION commenced in the Superior Court on October 13, 1977.

The case was heard by *Ronan*, J., on motions to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Ludwig Alban* for the plaintiff.

*James C. Heigham* for the defendants.

HENNESSEY, C.J.   In this case we construe for the first time this Commonwealth's statute dealing with unauthorized publication of a person's name or picture.  This is an action for monetary damages based on the use of a photograph of the plaintiff as an illustration to an article appearing in the November, 1976, issue of The Atlantic Monthly magazine, published by The Atlantic Monthly Company. The defendants are the publisher of the magazine and the author of the article.  The plaintiff alleges two separate grounds for recovery:  (1) that the defendants used her photograph without her consent for advertising or trade purposes in violation of G. L. c. 214, § 3A; and (2) that the de-

fendants' use of this photograph libelled the plaintiff. Both defendants moved in the Superior Court to dismiss the plaintiff's complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The motions were allowed and judgments were entered for the defendants. We affirm the judgments.

The magazine ran a story in its November, 1976, issue entitled "After the Sexual Revolution" which, from the truncated portion accompanying the plaintiff's complaint, appears to deal with modern sexual and social mores. There is no suggestion that the plaintiff is personally mentioned, discussed or identified in the magazine article. Rather, she is merely one of several people shown in an otherwise unrelated photograph used to illustrate the article. The plaintiff did not authorize this publication of her photograph.

1. The plaintiff alleges that the defendants' use of her photograph was in violation of G. L. c. 214, § 3A, which provides, inter alia, that "[a]ny person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent . . . may recover damages for any injuries sustained by reason of such use." This statute, which was first enacted in 1973, has not previously been construed or applied by the State courts of Massachusetts.[1]

Both parties have argued that in interpreting G. L. c. 214, § 3A, this court should be guided by the extensive case law of New York construing the older New York Civil Rights Law §§ 50-51 (McKinney 1976 & Supp. 1979),[2]

---

[1] But see *Old Colony Donuts, Inc.* v. *American Broadcasting Cos.,* 368 F. Supp. 785, 788-789 (D. Mass. 1974), where the Federal District Court denied recovery under this statute for the televising of pictures of the plaintiff's doughnut shop and business name because the television program involved a matter of public interest.

[2] "§ 50. *Right of privacy.* A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

"§ 51. *Action for injunction and for damages.* Any person whose name, portrait or picture is used within this state for advertising purposes

which contains language identical to the essential language of the Massachusetts statute. "The text of the [New York] statute appears to proscribe only . . . the appropriation and use in advertising or to promote the sale of goods, of another's name, portrait or picture without his consent.[3]. . . The New York courts have, however, construed the statute to operate much more broadly. . . . Specifically, it has been held in some circumstances to authorize a remedy against the press and other communications media which publish the names, pictures, or portraits of people without their consent." *Time, Inc.* v. *Hill,* 385 U.S. 374, 381-382 (1967).

We decline to apply such a broad interpretation to G. L. c. 214, § 3A. The statutory scheme of Massachusetts differs from that of New York. The caption of New York Civil Rights Law § 50 is "Right of Privacy," although the term

---

or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of. this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages. But nothing contained in this article shall be so construed as to prevent any person, firm or corporation, practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this article shall be so construed as to prevent any person, firm or corporation from using the name, portrait or picture of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait or picture used in connection therewith; or from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith."

[3] Utah's statute was modeled on New York's and, following early New York decisions, the Utah Supreme Court has construed it to afford a cause of action only in such cases. *Donahue* v. *Warner Bros. Pictures Distrib. Corp.,* 2 Utah 2d 256 (1954).

nowhere appears in the text of the statute itself.[4] Even if it might be said that this wording invited broad construction, it would be inappropriate to follow this route in construing G. L. c. 214, § 3A, because our Legislature has provided a separate statute, G. L. c. 214, § 1B, with the caption "Right of Privacy," which reads in pertinent part, "A person shall have a right against unreasonable, substantial or serious interference with his privacy."[5] In order to avoid creating an unwarranted statutory redundancy where none actually exists, we must interpret G. L. c. 214, § 3A, in a way that permits it to perform its intended function without overlapping the function of the Right of Privacy statute.

A sharp distinction must therefore be drawn between the interest which is protected by the New York "Right of Privacy" statute and that which is protected by G. L. c. 214, § 3A. In *Themo* v. *New England Newspaper*

---

[4] "The statute was enacted in 1903 following the decision of the [New York] Court of Appeals in 1902 in *Roberson* v. *Rochester Folding Box Co.*, 171 N.Y. 538 . . . . *Roberson* was an action against defendants for adorning their flour bags with plaintiff's picture without her consent. It was grounded upon an alleged invasion of a 'right of privacy,' defined by the Court of Appeals to be 'the claim that a man has the right to pass through this world, if he wills, without having his picture published . . . or his eccentricities commented upon either in handbills, circulars, catalogues, periodicals or newspapers . . . .' 171 N.Y., at 544. The Court of Appeals traced the theory to the celebrated article of Warren and Brandeis, entitled The Right to Privacy, published in 1890. 4 Harv. L. Rev. 193. The Court of Appeals, however, denied the existence of such a right at common law but observed that '[t]he legislative body could very well interfere and arbitrarily provide that no one should be permitted for his own selfish purpose to use the picture or the name of another for advertising purposes without his consent.' 171 N.Y., at 545. The legislature enacted §§ 50-51 in response to that observation." *Time, Inc.* v. *Hill*, 385 U.S. 374, 380-381 (1967).

[5] No allegation of a violation of this statute appears in the plaintiff's complaint and thus no such issue is before us. The complaint does contain a cryptic reference to "a violation of plaintiff's right of privacy" but since no arguments were made either in the briefs or orally concerning any non-statutory right of individuals to recover monetary damages for an invasion of privacy, we do not today address the question whether any such rights do or should exist in this Commonwealth. See *Frick* v. *Boyd*, 350 Mass. 259, 264 (1966); *Commonwealth* v. *Wiseman*, 356 Mass. 251, 258 (1969).

*Publishing Co.*, 306 Mass. 54, 57 (1940), this court characterized the right of privacy as a right which "directly concerns one's own peace of mind." In contrast, the interest which is protected by G. L. c. 214, § 3A, is the interest in not having the commercial value of one's name, portrait or picture appropriated to the benefit of another. The value of one's name, portrait or picture is not appropriated "when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." See Restatement (Second) of Torts § 652C, Comment d (1977). Thus, the crucial distinction under G. L. c. 214, § 3A, must be between situations in which the defendant makes an incidental use of the plaintiff's name, portrait or picture and those in which the defendant uses the plaintiff's name, portrait or picture deliberately to exploit its value for advertising or trade purposes.

An examination of a pair of cases from outside this jurisdiction is helpful in clarifying this distinction as it applies to the case at bar. In *Nelson* v. *Maine Times*, 373 A.2d 1221 (Me. 1977), the defendant newspaper published, without consent, a photograph of the infant plaintiff in conjunction with a book review. The plaintiff contended, inter alia, that the photograph "exploited his likeness and his heritage as a member of the Penobscot Nation or Tribe of Indians." *Id.* at 1222. The Supreme Judicial Court of Maine found that the plaintiff had not alleged a cause of action for the tort of "appropriation of [an]other's name or likeness" because "the appropriation must benefit the tortfeasor. . . . It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness" that this cause of action can exist. "The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness." *Id.* at 1224, quoting from Restatement (Second) of Torts § 652C, Comment d (1977).

The Maine court distinguished *Pavesich* v. *New England Life Ins. Co.*, 122 Ga. 190 (1905), "a case where the defendant had caused a newspaper advertisement to be published containing a photograph of the plaintiff who was depicted therein as urging the purchase of life insurance from the defendant." *Id.* The Maine court noted that in *Pavesich* the advertisement, "by soliciting sales, was of direct pecuniary benefit to the defendant." *Id.*

Another instructive case is *Jenkins* v. *Dell Publishing Co.*, 251 F.2d 447 (3d Cir.), cert. denied, 357 U.S. 921 (1958), in which the plaintiffs complained that the defendant magazine damaged them by publishing their picture without permission in connection with the true story of the homicide of a member of the plaintiffs' family. The court, ruling in favor of the defendant, analyzed the plaintiffs' claim as follows. "The plaintiffs' tragedy was published because the publisher thought that the public would be interested in reading about it, and not to advertise, promote or publicize anything else. . . . '[C]ommercial' uses are those in which an individual's picture or story has been associated with something else in commercial advertising. Experience has shown that a person of normal sensitivity is likely to find this type of commercialization of his personality very objectionable. At the same time no social interest is jeopardized in curbing such unauthorized advertising practices. Quite different are the cases like this one where a story is recounted solely for the reader interest it may evoke. . . . [T]he commercial character of newspapers and magazines is not a significant circumstance in this . . . case. . . ." *Id.* at 450-451. The court added that it was likewise unconcerned with whether the article was intended to inform or entertain the reader, refusing "to make a distinction between news for information and news for entertainment in determining the extent to which the publication is privileged." Id. at 451. See *Zacchini* v. *Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 578 (1977).

Under the foregoing principles it is clear that the instant case is one of incidental use of the plaintiff's picture and not

an actionable appropriation of that picture for trade or advertising purposes. Here the photograph was published in connection with what is apparently a sociological commentary, and not as a means of soliciting sales or in association with an advertisement of any kind. The article or story involved, whether it be viewed as an effort to inform or entertain the readership, is a legitimate, noncommercial use. The fact that the defendant is engaged in the business of publishing The Atlantic Monthly magazine for profit does not by itself transform the incidental publication of the plaintiff's picture into an appropriation for advertising or trade purposes.

2. The plaintiff's claim of libel must also fail. The test of whether a publication is defamatory is whether, in the circumstances, the writing discredits the plaintiff "in the minds of any considerable and respectable segment in the community." *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975). The publication in question is not defamatory on its face. See *Lyman* v. *New England Newspaper Publishing Co.*, 286 Mass. 258 (1934). The photograph in the instant case merely depicts four well-dressed young women, including the plaintiff, conversing in a group. A young man in the background appears to be clapping his hands and dancing to music. In short, the picture portrays an ordinary party scene at what is apparently a public lounge, club or restaurant. Moreover, the plaintiff has not pleaded any defamatory innuendo. "No facts are set out which show that in consequence of the circumstances attending their publication the words were intended to convey or would or could be understood to convey a derogatory meaning not on their face." *Colby Haberdashers, Inc.* v. *Bradstreet Co.*, 267 Mass. 166, 170 (1929).

Because it appears beyond doubt that the plaintiff can prove no set of facts in support of either of her claims which would entitle her to relief, we affirm the action of the Superior Court in dismissing both counts of the complaint under Mass. R. Civ. P. 12 (b) (6). See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977).

*Judgments affirmed.*