475 A.2d 448

**Zantia LAWRENCE et al.**

v.

**The A.S. ABELL COMPANY et al.**

**No. 164, Sept. Term, 1982.**

Court of Appeals of Maryland.

May 31, 1984.

Stephen N. Goldberg, Baltimore (Rebecca A. Bryant, Baltimore, on the brief), for appellants.

Abbe David Lowell, Washington, D.C. (Douglas D. Connah, Jr. and Venable, Baetjer & Howard, Baltimore, on the brief), for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COLE, Judge.

The issue presented in this case is whether the right of privacy of two children and their mothers was invaded when a newspaper republished, for its own advertising campaign, a portion of an edition in which the children's photograph appeared. The facts are not in dispute.

On July 29, 1979, two infants, Zantia Lawrence and Kermit Fowlkes, Jr., were taken by Fowlkes' mother to an Afram Festival in downtown Baltimore. While there, Jed Kirschbaum, a photographer for the *Sunpapers*, requested permission to photograph the children for an article about the festival. Mrs. Fowlkes consented. The next day two photographs of the children appeared on the front page of all editions of *The Evening Sun* with a caption indicating the names and ages of the children and where the pictures had been taken.

About six weeks later *The Evening Sun* began an advertising campaign in which the top half of the front page of the issue that included the infants' photographs was reproduced with the banner headline changed to read, "More News is Good News." The advertising campaign consisted of billboards, commercials, and rack cards. Counsel for the infants and their mothers demanded, and was refused, compensation for the use of the photograph.

The mothers brought suit in the Superior Court of Baltimore City (now the Circuit Court for Baltimore City) alleging unauthorized use of the photograph in the advertising campaign and unjust enrichment. The court granted the motion for summary judgment filed by The A.S. Abell Company and Kirschbaum. The mothers appealed to the Court of Special Appeals, but we granted certiorari prior to consideration by the intermediate appellate court. For the reasons given below we affirm the judgment of the lower court.

The mothers' arguments for compensation are based on invasion of privacy and unjust enrichment. This case rests upon the determination of the first issue, because if there was no invasion of privacy for which the infants must be compensated, then the newspaper has not been unjustly enriched by using the photographs in its advertising campaign.

The invasion of the right of privacy was articulated as a separate tort in a famous article by Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193 (1890). After a thorough examination of certain cases, the authors determined that a common law right of privacy was entitled to recognition because the substance of such a right already had been protected under the appearance of property rights, defamation, or breach of an implied contract. They concluded that violation of the right of privacy itself was actionable: "[t]he legal doctrines relating to infractions of what is ordinarily termed the common-law right to intellectual and artistic property are, it is believed, but instances and applications of a general right to privacy, which properly understood afford a remedy for the evils under consideration." *Id.* at 198.

The first and leading case decided by a court of last resort in the United States recognizing this right, *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905), explained:

The right of privacy has its foundation in the instincts of nature. It is recognized intuitively, consciousness being the witness that can be called to establish its existence. Any person whose intellect is in a normal condition recognizes at once that as to each individual member of society there are matters private, and there are matters public so far as the individual is concerned. [*Id.* 50 S.E. at 69.]

A later case adopting the right of privacy, *Gill v. Curtis Publishing Co.*, 38 Cal.2d 273, 239 P.2d 630 (1952), recognized as persuasive some of the arguments advanced by that right's initial exponents:

"[T]he increased complexity and intensity of modern civilization and the development of man's spiritual sensibilities have rendered man more sensitive to publicity and have increased his need of privacy, while the great technological improvements in the means of communication have more and more subjected the intimacies of his private life to exploitation by those who pander to commercialism and to prurient and idle curiosity. A legally enforceable right of privacy is deemed to be a proper protection against this type of encroachment upon the personality of the individual." [*Id.* at 277, 239 P.2d 630 (quoting 41 Am.Jur. Privacy, § 9).]

Maryland recognized the tort of invasion of privacy in *Carr v. Watkins*, 227 Md. 578, 177 A.2d 841 (1962). In doing so, it joined the majority of states that have recognized this tort.[1] Our cases have viewed with approval the Restatement's definition of the invasion of the right of

---

1. New York, Utah and Virginia have enacted statutes protecting the right of privacy. *See* N.Y.Civ. Rights Law §§ 55 and 51 (McKinney 1976, 1983–84 Cum.Supp.); Utah Code Ann. § 76–9–401 to 406 (1978); Va.Code § 18.2–216.1 (1982). Numerous jurisdictions have judicially recognized the right. *See Daily Times Democrat v. Graham,* 276 Ala. 380, 162 So.2d 474 (1964); *Reed v. Real Detective Pub. Co.,* 63 Ariz. 294, 162 P.2d 133 (1945); *Olan Mills, Inc. of Texas v. Dodd,* 234 Ark. 495, 353 S.W.2d 22 (1962); *Gill v. Curtis Publishing Co.,* 38 Cal.2d 273, 239 P.2d 630 (1952); *Korn v. Rennison,* 21 Conn.Supp. 400, 156 A.2d 476 (1959); *Guthridge v. Pen-Mod, Inc.,* 239 A.2d 709 (Del.Sup.1967); *Jacova v. Southern Radio and Television Co.,* 83 So.2d 34 (Fla.1955); *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190, 50 S.E. 58 (1905);

privacy. *See Hollander v. Lubow,* 277 Md. 47, 351 A.2d 421, *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Beane v. McMullen,* 265 Md. 585, 291 A.2d 37 (1972); *Household Fin. Corp. v. Bridge,* 252 Md. 531, 250 A.2d 878 (1969). In these cases we quoted § 652A of the *Restatement (Second) of Torts,* which outlines the four distinct branches of the tort:

§ 652A.  General Principle

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name or likeness, as stated in § 652C; or

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

---

*Fergerstrom v. Hawaiian Ocean View Estates,* 50 Hawaii 374, 441 P.2d 141 (1968); *Carlson v. Dell Publishing Co.,* 65 Ill.App.2d 209, 213 N.E.2d 39 (1965); *Peterson v. Idaho First National Bank,* 83 Idaho 578, 367 P.2d 284 (1961); *Yoder v. Smith,* 253 Iowa 505, 112 N.W.2d 862 (1962); *Kunz v. Allen,* 102 Kan. 883, 172 P. 532 (1918); *Wheeler v. P. Sorensen Manufacturing Co.,* 415 S.W.2d 582 (Ky.1967); *Pallas v. Crowley, Milner & Co.,* 322 Mich. 411, 33 N.W.2d 911 (1948); *Deaton v. Delta Democrat Publishing Co.,* 326 So.2d 471 (Miss.1976); *Biederman's of Springfield, Inc. v. Wright,* 322 S.W.2d 892 (Mo.1959); *Welsh v. Pritchard,* 125 Mont. 517, 241 P.2d 816 (1952); *Hamberger v. Eastman,* 106 N.H. 107, 206 A.2d 239 (1964); *Canessa v. J.I. Kislak, Inc.,* 97 N.J.Super. 327, 235 A.2d 62 (1967); *Montgomery Ward v. Larragoite,* 81 N.M. 383, 467 P.2d 399 (1970); *Flake v. Greensboro News Co., et al.,* 212 N.C. 780, 195 S.E. 55 (1937); *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (1956); *Tollefson v. Price,* 247 Or. 398, 430 P.2d 990 (1967); *Bennett v. Norban,* 396 Pa. 94, 151 A.2d 476 (1959); *Meetze v. Associated Press,* 230 S.C. 330, 95 S.E.2d 606 (1956); *Truxes v. Kenco Enterprises, Inc.,* 80 S.D. 104, 119 N.W.2d 914 (1963); *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973); *Roach v. Harper,* 143 W.Va. 869, 105 S.E.2d 564 (1958). *See also Afro-American Publishing Co. v. Jaffe,* 366 F.2d 649 (D.C.Cir.1966) (action for invasion of privacy is maintainable in Washington D.C.); *Hazlitt v. Fawcett Publications, Inc.,* 116 F.Supp. 538 (D.Conn.1953) (Oklahoma law provides for an invasion of privacy action).

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

The case *sub judice* is based on § 652A(2)(b), because the plaintiffs have alleged that the newspaper appropriated the children's likenesses for use in its advertising campaign. The Court in *Pavesich v. New England Life Ins. Co.,* *supra,* initially recognized this aspect of the tort, noting that "the publication of one's picture without his consent by another as an advertisement, for the mere purpose of increasing the profits and gains of the advertiser, is an invasion of [the] right [of privacy]...." *Id.* 50 S.E. at 81. There have been a number of decisions in this particular area of the tort and one commentator concluded that "the effect of the appropriation is to recognize or create an exclusive right in the individual plaintiff to a species of trade name, his own, and a kind of trademark in his likeness." W. Prosser, *Torts* § 117, at 807 (4th Edition 1971).

This Court has not considered the appropriation for the defendant's benefit of a person's name or likeness, but § 652A(2)(b) directs our attention to § 652C which provides: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." The comments to this section indicate that it protects the individual's interest in the exclusive use of his identity from appropriation by another to advertise his business or product or for similar commercial purposes. However, Comment d explains that the tort does not apply to an incidental use of a person's name or likeness:

The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; *nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought*

*before the public, since neither is in any way a private matter and both are open to public observation.* It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes. [Emphasis supplied.]

Several New York cases, arising under a statute making a person liable for using another's picture for advertising purposes,[2] have analyzed this branch of the tort and have

---

**2.** New York Civil Rights Law, Section 51 (McKinney 1976, 1983–84 Cum.Supp.) Action for injunction and for damages, provides:

Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages. But nothing contained in this article shall be so construed as to prevent any person, firm or corporation, from selling or otherwise transferring any material containing such name, portrait or picture in whatever medium to any user of such name, portrait or picture, or to any third party for sale or transfer directly or indirectly to such a user, for use in a manner lawful under this article; nothing contained in this article shall be so construed as to prevent any person, firm or corporation practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this act shall be so construed as to prevent any person, firm or corporation from using

developed the incidental use exception. The seminal case construing the New York statute, *Booth v. Curtis Publishing Company*, 15 A.D.2d 343, 223 N.Y.S.2d 737, *aff'd*, 11 N.Y.2d 907, 228 N.Y.S.2d 468, 182 N.E.2d 812 (1962), was considered by the trial court. In *Booth* the plaintiff, Shirley Booth, a television and film star, sued the publisher of *Holiday* magazine for invasion of her right to privacy due to the use of her photograph in advertisements for the magazine. The photograph originally had illustrated a story in *Holiday* about a resort at which Booth was staying. The picture was taken with Ms. Booth's knowledge, and without her objection. Several months later the magazine published the same photograph in full-page advertisements of the magazine in *Holiday* and in other magazines. The court held that republication of this portion of the magazine in advertisements was an incidental use and thus not actionable:

> It stands to reason that a publication can best prove its worth and illustrate its content by submission of complete copies of or extraction from past editions. Nor would it suffice to show stability of quality merely to utilize for that purpose a current issue.

> \*     \*     \*     \*     \*     \*

> Consequently, it suffices here that so long as the reproduction was used to illustrate the quality and content of the periodical in which it originally appeared, the statute was not violated, albeit the reproduction appeared in other media for purposes of advertising the periodical. [223 N.Y.S.2d at 743–44.]

---

the name, portrait or picture of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait or picture used in connection therewith; or from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith.

*Booth* was followed in *Namath v. Sports Illustrated,* 48 A.D.2d 487, 371 N.Y.S.2d 10 (1975), *aff'd,* 39 N.Y.2d 897, 386 N.Y.S.2d 397, 352 N.E.2d 584 (1976), where football player Joe Namath sued the magazine for republishing a photograph of him, originally used in conjunction with a news article on the 1969 Super Bowl Game, as part of an advertising campaign. The court, citing *Booth,* held that "[t]he use of plaintiff's photograph was merely incidental advertising of defendants' magazine in which plaintiff had earlier been properly and fairly depicted and, hence, it was not violative of the Civil Rights Law." *Id.* at 11. *See also Friedan v. Friedan,* 414 F.Supp. 77 (S.D.N.Y.1976) (relief denied to man whose picture was included in a magazine article about his former wife and used to advertise the magazine).[3]

These cases and the Restatement indicate that in determining whether the right of privacy has been violated, we must consider two issues: (1) whether the initial use of the photograph was proper; and (2) whether the republication of the photograph was "merely incidental" or rather whether it amounted to an appropriation of the plaintiffs' likenesses to promote the sale of the newspaper.

■ The first issue presents no real problem. As noted in Comment d to Restatement § 652C, "a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes." In this case, the children's picture was taken while they were in a public place at a

---

**3.** In this case a picture taken in 1949 of feminist leader Betty Friedan and her former husband with their child was included in an issue of the New York Magazine which had a theme of a twenty-five year throwback to the year 1949. The photograph also was used in television commercials advertising the magazine issue in which the article about Betty Friedan appeared. In denying relief to Mr. Friedan the court stated that, "it has long been held that, under New York law, an advertisement, the purpose of which is to advertise the article 'shares the privilege enjoyed by the article' if the 'article itself was unobjectionable." *Friedan v. Friedan,* 414 F.Supp. 77, 79 (S.D.N.Y. 1976) (citations omitted).

newsworthy event. As Prosser notes, the cases early came to grips with this problem and held that publication of such news is not appropriation of a likeness for the defendant's advantage. Prosser, *supra* at 806. In fact, allowing an action simply for publication of a person's name or likeness in the news probably would be an unconstitutional violation of freedom of the press. *See Donahue v. Warner Bros. Pictures Distributing Corp.*, 2 Utah 2d 256, 272 P.2d 177 (1954). Furthermore, in this case, the parent of one infant plaintiff, who also had custody of the other child (with the knowledge and approval of that child's mother), gave the photographer permission to take the pictures for use in the paper in an article about the festival. Therefore, the initial publication of the picture was proper.

The real issue is whether the republication of the page of the paper was a "merely incidental" use of the photograph.

The mothers contend that the use was not incidental because the original publication was different from the advertisements in several respects. They assert that the original headline was changed; the heading from the feature story in the far right column was changed; and the only legible items, other than the headline, were the three sub-headlines. Further, they argue that the use was not incidental because the children's photograph was the focus of the entire campaign. *Booth, supra,* and Comment d to § 652C of the Restatement dispose of these contentions.

■ The Restatement indicates that a person's name or likeness must have "commercial or other value" before an appropriation is actionable. In the New York cases examined above, each plaintiff had a recognized market value (*e.g.,* Shirley Booth (actress); Joe Namath (quarterback)). They were objecting to the uncompensated appropriation of their proven economic worth. However, in this case, the children's identity had no such proven "value." They were not famous and, in fact, were not even professional models.

Rather, they simply were members of the public whose pictures were taken while they were in a public place. Thus, the children did not demonstrate that the paper even took advantage of any special value associated with their likenesses.

Significantly, the court in *Booth* made clear that it is acceptable to use extractions of past issues of a publication for advertising purposes, and the fact that a photograph may have been the focus of the advertising campaign is irrelevant. In *Booth* the photograph was enlarged to be the main focus of the advertisement and the captions were changed. The court found that this use was incidental because the picture was used to show the quality and content of the magazine. The use of the photograph in the advertisement campaign in the case *sub judice* is strikingly similar to the use of the photograph in *Booth*. If the advertisements had stated or implied that the children were endorsing or representing the newspaper then the use would not have been incidental. But where, as here, the photograph was reproduced in an actual portion of an issue of the paper to show a realistic sample of the product of the publisher and not to boost profits through the use of the children's photograph then the use is incidental.

Therefore, we conclude that there was no appropriation of the children's likenesses, no invasion of privacy, and the infants and their mothers are not entitled to compensation. It follows then that their claim of unjust enrichment fails. That doctrine only applies when one has been unconscionably permitted to enrich himself at the expense of others. The facts of this case do not support such a conclusion.

Accordingly, the judgment of the trial court is affirmed.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. APPELLANTS TO PAY THE COSTS.