Shelia Ann COX, Susan Keller and Susan Smith, Plaintiffs and Appellants,

v.

Orrin HATCH, Union Members for Hatch Committee, Friends for Orrin Hatch Committee, Hatch Election Committee, Michael Leavitt and John Does I–X, Defendants and Appellees.

No. 19257.

Supreme Court of Utah.

July 18, 1988.

Brian M. Barnard, Debra J. Moore, A. Howard Lundgren, Aldrea C. Alcabes, Salt Lake City, for plaintiffs and appellants.

Robert S. Campbell, Jr., Richard B. Ferrari, Cory H. Maxwell, Salt Lake City, for defendants and appellees.

STEWART, Justice:

Plaintiffs Shelia Ann Cox, Susan Keller, and Susan Smith brought this action against United States Senator Orrin Hatch and several of his campaign staff, alleging three claims for relief, defamation, invasion of privacy, and abuse of personal identity. All three claims for relief are based on the defendants' publication of a photograph of the plaintiffs together with Senator Hatch that was used in a political advertisement during his 1982 senatorial campaign. The

trial court dismissed all three claims on the ground that the actions had "a chilling effect on the closely guarded right of free speech" and, therefore, were barred by the First Amendment to the United States Constitution.

The plaintiffs are employees of the United States Postal Service and members of the American Postal Workers Union. On September 6, 1982, Senator Hatch, accompanied by campaign workers, went to the plaintiffs' place of employment to take photographs for use in his 1982 reelection campaign. The plaintiffs posed for several photographs with Senator Hatch. They maintain that although they consented to the photographs, they did not consent to the manner in which they were used. One of the photographs was included in an eight-page political flier entitled "Senator Orrin Hatch Labor Letter," which was distributed by the Senator's "Union Members for Hatch Committee." It contained several articles related to labor issues and five photographs showing Senator Hatch in various settings talking with workers. None of the photographs was captioned. The plaintiffs were shown in one photograph smiling at Senator Hatch, who was looking at their work.

That photograph was approximately three inches square and appeared on an 11½ × 17–inch page. The page contained a reprint of an article entitled "Bargaining For a Better America," which was written by Senator Hatch and had appeared in the September, 1981, issue of *First Monday Magazine*. The article discussed the Republican Party's commitment, and particularly the commitment of the then Republican-controlled Senate, to make a better life for union members. The article does not refer to the photograph or the plaintiffs and does not state that the persons in the photograph supported Hatch or his views. Nor is the photograph used to illustrate any particular point in the article or in the flier.

The plaintiffs allege that the photograph can reasonably be construed to be an implicit endorsement of Senator Hatch for reelection. They deny having endorsed him; indeed, they point out that because they are postal employees they are precluded by federal law from publicly approving or endorsing any political candidate or actively participating in a political campaign. They assert that after the publication of the photograph, they were investigated by their employer and the union as to the extent of their involvement in Hatch's campaign.

We address first whether the free speech clause of the First Amendment bars the plaintiffs' actions for defamation, invasion of privacy, and abuse of identity. We assume at this point, for the purpose of argument, that the publication of the plaintiffs' photograph in Senator Hatch's campaign flier was defamatory, an invasion of the common law right of privacy, and a violation of the Utah Abuse of Identity statute. The defendants assert that the First Amendment establishes an absolute defense to all three actions because the photograph was part of a communication made during the course of a political campaign by a candidate for office. The defendants cite no case that directly supports such a sweeping proposition. On the other hand, the plaintiffs contend that the First Amendment provides no protection whatsoever to the defendants' publication of the picture.

## I. DEFAMATION

### A. *First Amendment Privilege*

The indispensable conditions of self-government are protected by the free speech clause of the First Amendment. Freedom of speech is not only the hallmark of a free people, but is, indeed, an essential attribute of the sovereignty of citizenship. It has its "most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971). Freedom of speech is not only essential for the psychological, moral, intellectual, and political well-being of individuals, but it is also "the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). Free speech does not, however,

always prevail against all other values, such as those protected by the state law of defamation, invasion of privacy, and abuse of personal identity.

For over two decades now the courts have attempted to strike a balance between free speech interests protected by statute and federal constitutions and personality and reputational interests protected by state tort law. *See, e.g., Hustler Magazine, Inc. v. Falwell,* —— U.S. ——, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

The United States Supreme Court in *New York Times Co. v. Sullivan* first recognized a qualified privilege under the First Amendment for a false, defamatory communication made by a defendant concerning a public official. The privilege effectuates an accommodation between free speech interests and reputational interests by requiring a plaintiff who is a public official to prove that a defendant acted with "actual malice" in making a false, defamatory statement about the plaintiff. Thus, a public official may recover damages for a defamatory falsehood relating to his official conduct, but only if he proves that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not."[1] *Id.* at 279–80, 84 S.Ct. at 726. The *New York Times* privilege was extended to include "public figures" in *Associated Press v. Walker,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and *Curtis*

*Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 346–49, 94 S.Ct. 2997, 3010–11, 41 L.Ed.2d 789 (1974), made a different accommodation between free speech and reputational interests in cases involving plaintiffs who are private persons. *Gertz* held that (1) the reputational interests of private individuals could receive greater constitutional protection than the protection accorded public officials and public figures, (2) the libel laws of the states had to require some degree of fault on the part of a defendant for a private plaintiff to recover for defamation and that the states could choose what degree of fault had to be proved, as long as some level of fault was required; and (3) presumed and punitive damages could be awarded only if the plaintiff proved actual malice.[2] *Seegmiller v. KSL, Inc.,* 626 P.2d 968 (Utah 1981), reviewed the case law from *New York Times* through *Gertz* and traced the development and expansion of the constitutional privilege concept. *Seegmiller* held that private person plaintiffs in a libel action who are neither public officials nor public figures must prove that the defendant was negligent in making a false, defamatory statement. 626 P.2d at 973. After *Seegmiller* was decided, *Dun & Bradstreet Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), made clear that the constitutional requirement of fault in a private plaintiff defamation case applies only if the subject matter of the defamatory falsehood pertains to a matter of "public concern."[3] If the defamatory

---

1. As a number of state court and lower federal court opinions indicate, the term "actual malice," as used in *New York Times* and its progeny, has often been confused with the common law terms "malice" and "actual malice," which denote personal hostility or ill will. *See, e.g., Henry v. Collins,* 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965). Although the common law term and the *New York Times* term use the same words, they denote different legal concepts.

2. The Court in *Gertz* also suggested that if a statement was not defamatory on its face, but defamatory only by inuendo, actual malice might be required. Whether that dictum would be followed today is not clear. *See Dun &*

*Bradstreet Inc. v. Greenmoss Builders Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).

3. In *Seegmiller,* we had no occasion to discuss the public interest issue because the trial court had held that the defamatory statement concerned a matter of public interest and that ruling was not challenged on appeal.

We did, however, refer to the "public issue" qualified privilege, which provided the basis for the decision in *Ogden Bus Lines v. KSL, Inc.,* 551 P.2d 222 (Utah 1976), and *Williams v. Standard–Examiner Publishing Co.,* 83 Utah 31, 27 P.2d 1 (1933). In both of these cases, the basic privilege was not directly rooted in the First Amendment, but was founded on a similar common law policy.

falsehood does not relate to a matter of "public concern," state law could constitutionally continue to apply the common law doctrine of strict liability in a defamation action. *Dun & Bradstreet* also made clear that *New York Times* and *Gertz* were not limited in their holdings to instances where the defendants are institutional media organizations. *Dun & Bradstreet*, 472 U.S. at 784, 105 S.Ct. at 2958 (Brennan, J., dissenting) (expressing the opinion of five members of the Court).

■ It is not altogether clear which principle of fault controls here, i.e., whether the plaintiffs would have to prove constitutional malice or negligence or whether they could proceed on the basis of strict liability. The case is before us on a truncated record; we have only a complaint, which apparently was not drafted in light of any of the above law, no answer, a few motion papers, and interrogatories. Nevertheless, it is apparent that the plaintiffs argue that the photograph implicitly asserts that they are Republicans and supporters of Senator Hatch, and we assume arguendo at this point that that assertion is both defamatory and a violation of the plaintiffs' privacy interests.

The plaintiffs' assertion clearly pertains to a matter of public concern, as that term is used in *Dun & Bradstreet*. Communications to voters by an elected official or a candidate for public office which appropriately pertain to a political campaign are a matter of public interest. A candidate's identification of himself with workers or other constituents is part and parcel of ordinary political communication. Such communications are essential to the public in choosing governmental officials and to the latter in informing the public. *See St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). It follows that the plaintiffs may not proceed on the basis that the defendants are strictly liable. *Dun & Bradstreet*, 472 U.S. at 763, 105 S.Ct. at 2947.

■ That conclusion leads to the next issue—whether the plaintiffs must prove actual malice or negligence. The answer depends on whether the plaintiffs are public officials or public figures, on the one hand, or private persons, on the other. Concededly, the plaintiffs are public employees. But not all public employees are "public officials," and those who are "public officials" do not have that legal status for every kind of defamation. "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Rosenblatt v. Baer*, 383 U.S. 75, 86 n. 13, 86 S.Ct. 669, 676 n. 13, 15 L.Ed.2d 597 (1966). Clearly, the alleged defamatory statement is irrelevant to the plaintiffs' qualifications as postal workers. The Hatch political flier did not raise any issues at all about the efficiency or integrity of either the postal service or any of its employees. A public disclosure of the plaintiffs' political allegiances was simply not warranted by their duties as postal employees. It follows that the plaintiffs are private plaintiffs for the purpose of this lawsuit. The complaint does not specifically allege that the defend-

The common law standard for "actual malice" that must be proved to overcome the common law public interest privilege is different from the *New York Times* "actual malice" standard that a plaintiff must plead and prove in a "public official" or "public figure" case and that a "private plaintiff" must prove to recover presumed and punitive damages in a private plaintiff case involving a matter of public interest. Thus, common law malice, i.e., ill will or spite, has no place in a "public official" or "public figure" case. In *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), the Supreme Court held that even when a speaker or writer is motivated by spite or ill will in defaming another, the communication is still protected by the First Amendment unless deliberate falsity or reckless disregard of the truth is also proved. The Court stated:

> Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth.

*Id.* at 73, 85 S.Ct. at 215. Furthermore, recklessness under the *New York Times* standard cannot be inferred from personal animosity or hatred. *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

ants acted with negligence or, for that matter, malice. But neither is the complaint so defective that we would be justified in dismissing it for failure to state a claim for that reason. *See Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873 (Utah 1983).[4] We acknowledge, however, a First Amendment interest in disposing of libel cases on motion and at an early stage when it appears that a reasonable jury could not find for the plaintiffs. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see generally* Matheson, *Procedure in Public Person Defamation Cases: The Impact of the First Amendment,* 66 Tex.L.Rev. 217 (1987). Nevertheless, it would be inappropriate to dismiss the defamation claim on the grounds discussed above.

In view of the above, we would ordinarily be required to reverse the trial court's order and remand for further proceedings on the defamation claim. However, for reasons that appear below, that claim must nevertheless be dismissed on a ground other than the one specified by the trial court. Our long-standing rule is that this Court may affirm a judgment of a lower court on a ground other than that relied on by that court. *See Spor v. Crested Butte Silver Mining, Inc.,* 740 P.2d 1304 (Utah 1987); *Thornock v. Cook,* 604 P.2d 934, 936 (Utah 1979).

B. *Sufficiency of Defamation Complaint*

Although the First Amendment does not bar the defamation action, the plaintiffs are not entitled to prevail on the appeal be-

cause they have failed to plead a valid claim for defamation. To be defamatory under Utah law, a communication must impeach an individual's honesty, integrity, virtue, or reputation or publish his or her natural defects or expose him or her to public hatred, contempt, or ridicule. Utah Code Ann. § 45–2–2(1) (1981). Whether the publication of an alleged defamatory statement, the photograph in this case, is capable of conveying a defamatory message is initially a question of law. *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 270–71 (3d Cir.1980); *El Meson Espanol v. NYM Corp.,* 521 F.2d 737, 739 (2d Cir.1975); *McCabe v. Village Voice, Inc.,* 550 F.Supp. 525, 528 (E.D.Pa.1982); *Frinzi v. Hanson,* 30 Wis.2d 271, 140 N.W.2d 259 (1966); *Restatement (Second) of Torts* § 614, comment b (1977); *Prosser and Keeton on The Law of Torts,* § 111, at 774 (5th ed. 1984).

The tort of defamation protects only reputation. A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff. Thus, an embarrassing, even though false, statement that does not damage one's reputation is not actionable as libel or slander. If no defamatory meaning can reasonably be inferred by reasonable persons from the communication, the action must be dismissed for failure to state a claim. Only if a court first determines that a publication might be considered defamatory by a reasonable person is there a fact issue for the trier of fact. *Steaks Unlimited,* 623 F.2d at 270–71; *El Meson,* 521 F.2d at 739–40; *Martin v. Municipal Pub-*

---

4. We give the plaintiffs the benefit of a rather substantial doubt on the sufficiency of the complaint. We also note that there is another conceivable ground for decision—consent of the plaintiffs. It is conceded that the plaintiffs consented to have their picture taken although they now contend that they did not consent to the use made of it. Even though that raises the issue of the scope of consent, we forego ruling on that issue because it raises a factual issue. Had the parties focused more squarely on the issue, as, for example, on a motion for summary judgment, it might have been ripe for adjudication.

Suffice it to say that even though consent is an absolute defense, the law must recognize the

obvious necessities of present-day political campaigns and not impose unrealistic conditions on candidates for public office and office-holders who are almost constantly photographed with persons in public places. A requirement that the media generally or politicians and candidates for public office must obtain the consent of all persons whose pictures are taken in public or semi-public places before the pictures could be published would go a long way toward "freezing" the publication of much information that is entitled to constitutional protections. Such an impediment to media coverage of public events is hardly consistent with the First Amendment. If consent has any place at all in such a context, it is indeed narrow.

*lications,* 510 F.Supp. 255, 257 (E.D.Pa. 1981); *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 442, 273 A.2d 899, 904 (1971); *Restatement supra,* § 614, comment b.

 Here, the photograph shows the plaintiffs with Senator Hatch in a work setting, and it appears in a political advertisement dealing with labor issues. At most, the photograph can be construed to imply that the plaintiffs are members of the Republican Party or that they supported Hatch's reelection. However, attribution of membership in a political party in the United States that is a mainstream party and not at odds with the fundamental social order is not defamatory, *Prosser and Keeton, supra,* § 111, nor is attribution of support for a candidate from one of those parties.[5]

It is, of course, true that some persons find such lack of merit in any political party other than their own that they feel affronted if they are identified as being affiliated with another party. But such subjective perceptions and sensibilities have little to do with reputation, since reputation is based on a collective judgment of a large group of people. *See Frinzi v. Hanson,* 30 Wis.2d at 278, 140 N.W.2d at 262. Clearly both Republican and Democratic Parties are mainstream parties, and neither party can legitimately be said, for purposes of defamation law, to be at odds in any way with the fundamental social order. To what extent the general principle extends beyond those two parties need not now be decided.

*Frinzi* illustrates the principle. A Democratic candidate for governor was accused by the state chairman of the Democratic Party of having been endorsed by certain Republicans and others who supported weakening anti-gambling laws. He was also attacked for "considering running as an independent [and] throw[ing] away all pretense at being a Democrat." 30 Wis.2d at 274, 140 N.W.2d at 260. The court held that however offensive to the plaintiff those statements were, they were not de-

famatory. 30 Wis.2d at 278, 140 N.W.2d at 262. On similar grounds, *Rawlins v. McKee,* 327 S.W.2d 633 (Tex.Civ.App.1959), held that a statement describing the plaintiff, a political candidate, as a "radical" who was "backed and financed by the big shot labor bosses" was not defamatory because it did not expose the plaintiff to "public hatred, contempt or ridicule" as required by the Texas libel statute. *See also Haas v. Evening Democrat Co.,* 252 Iowa 517, 107 N.W.2d 444 (1961); *Manasco v. Walley,* 216 Miss. 614, 63 So.2d 91 (1953); *Steinman v. Di Roberts,* 23 A.D.2d 693, 257 N.Y.S.2d 695 (1965), *aff'd,* 17 N.Y.2d 512, 267 N.Y.S.2d 512, 214 N.E.2d 789 (1966); Annotation, *Libel and Slander: Imputation of Subversive or Otherwise Objectionable Political or Social Principles,* 33 A.L.R.2d 1196, 1203 (1954).

However offensive the photograph in this case may have been to the plaintiffs, it could not, as a matter of law, have damaged their reputations or subjected them to "public hatred, contempt or ridicule." In sum, the complaint failed to state a claim for relief based on defamation.

## II. INVASION OF PRIVACY

### A. *First Amendment Privilege*

 The next issue is whether the First Amendment bars the the plaintiffs' actions for invasion of privacy and abuse of personal identity. *See generally Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (holding that state law preventing unjust enrichment and theft of good will from entertainer's right of publicity not prohibited by First Amendment); *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (applying constitutional malice standard to invasion of privacy action). The complaint does not spell out the plaintiffs' invasion of privacy theory beyond the claim for abuse of personal identity. Nor are any facts alleged that would justify basing any claim on anything other

---

**5.** We need not address the issue of whether a false statement alleging that a federal employee had engaged in illegal activities under the Hatch

Act might be defamatory. We only note that an imputation of criminality is defamatory; as slander, it is slanderous per se.

than publication of the photograph. While a person may have a legitimate interest in protecting his or her personal identity from exploitation by others, that interest is minimal when the person allows his picture to be taken in a public or semi-public place, and especially when one allows his or her picture to be taken with a politician who is running for office. The reasonable expectation of all concerned in those circumstances is that such pictures will likely be used to promote the politician's campaign. Clearly, publication of a photograph taken in those circumstances does not violate a valid and substantial concern for the protection of a person's image or sense of privacy.

 Counterbalanced against that minor interest is the overriding importance to society, as a whole, of maintaining the free flow of public information. Current technology subjects every person who happens to be in a public place to the possibility of having his or her picture taken. Newsworthy events and people are magnets for television news cameras and the still cameras of the print media. Because the recording and dissemination of newsworthy information is a matter of such high priority, the conclusion follows that persons who are in public or semi-public places and who are unexpectedly caught within the range of news cameras do not have a privacy interest that can prevail against the First Amendment informational interest. The same conclusion applies with even greater force to those who willingly allow their pictures to be taken. *Cf. Hustler Magazine v. Falwell,* — U.S. —, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). The reporting of current events, by electronic and other means, would be significantly restricted if the law were otherwise. In sum,

we hold that pictures of public officials and candidates for public office taken in public or semi-public places with persons who either pose with them or who inadvertently appear in such pictures may not be made the basis for an invasion of privacy or abuse of personal identity action.[6] *See also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918); *see generally Searle v. Johnson,* 709 P.2d 328 (Utah 1985).

**B.** *Sufficiency of Invasion of Privacy Complaint*

Even if the First Amendment did not bar the plaintiffs' invasion of privacy claims on the facts of this case, which it does, the complaint also fails to state a claim upon which relief can be granted.

Invasion of privacy as a common law tort has evolved over the years into four separate torts.[7] The *Restatement (Second) of Torts* (1977) defines four different types of invasion of privacy. Section 652A of the *Restatement* states:

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name or likeness, as stated in § 652C; or

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

---

**6.** It is arguable that the state interest in protecting reputation on the facts of this case is also so slight that we ought to employ a straight-out relevancy test and hold that the free speech interest will always prevail against a defamation action without even analyzing the effect of a constitutional privilege. *See Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). We are not inclined to do so, since the free speech interest is less likely to be adversely affected and the reputational interest may be greater.

**7.** "The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with right of the plaintiff ... 'to be let alone.'" Prosser, *Privacy,* 48 Calif.L.Rev. 383, 389 (1960).

■ Since the photograph here was taken in an open place and in a common workplace where there were a number of other people, neither the taking of the photograph nor its publication constituted an unreasonable intrusion into the plaintiffs' seclusion. Not only did the plaintiffs agree to have their photographs taken, but they also were in a place where they had no reasonable expectation of privacy, at least as to the fact of their being there in the company of others. In short, the facts alleged do not state a claim for relief, either for intrusion into their seclusion, *see Restatement, supra,* § 652B, comment c, or for publicity concerning private aspects of their lives, *see Restatement, supra,* § 652D, comment b.

■ Nor do the facts state a claim for placing the plaintiffs in a "false light" under § 652E. Under that section, the false light "must be highly offensive to a reasonable person." *Restatement, supra,* § 652D. For essentially the same reasons that the photograph was not susceptible to a defamatory meaning, it was not "highly offensive to a reasonable person." *See McCabe v. Village Voice, Inc.,* 550 F.Supp. 525, 529 (E.D.Pa.1982). Therefore, the photograph is not actionable under § 652E.[8]

■ Finally, we also hold that the facts alleged fail, as a matter of law, for two reasons, to assert a valid claim for the appropriation of another's name or likeness under the *Restatement* § 652C, or one's "personal identity" under Utah Code Ann. § 45-3-3 (1981).[9]

■ In the first instance, the complaint fails because it must allege that the plaintiffs' names or likenesses have some "intrinsic value" that was used or appropriated for the defendants' benefit. *Jackson v. Playboy Enterprises, Inc.,* 574 F.Supp. 10, 13 (S.D.Ohio 1983); *Vassiliades v. Garfinckel's Brooks Brothers,* 492 A.2d 580, 592 (D.C.Ct.App.1985); *Lawrence v. A.S. Abell Co.,* 299 Md. 697, 475 A.2d 448, 453 (1984); *Restatement supra,* § 652C, comment a; *see also Fogel v. Forbes, Inc.,* 500 F.Supp. 1081, 1088 (E.D.Pa.1980). The plaintiffs do not allege that their appearances have any intrinsic value or that they enjoy any particular fame or notoriety. A political endorsement by an unknown member of the general public has no "intrinsic value." Nor can intrinsic value be shown just because the defendants may have obtained some benefit by using the plaintiffs' likenesses when the benefit is the same as defendants would have had from using the likeness of a number of other workers.

The plaintiffs' photograph, viewed in the context of the entire flier, was not used for the purpose of appropriating any value that the plaintiffs' names or likenesses may have had. The flier contained eight pages of partisan political material emphasizing Senator Hatch's views on labor issues. The pictures highlight the articles; they

---

8. The Supreme Court held in *Time Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) that the *New York Times* malice standard applied in a false light invasion of privacy case. *But see Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 498 n. 2, 95 S.Ct. 1029, 1048 n. 2, 43 L.Ed.2d 328 (1975) (Powell, J. concurring).

9. A cause of action arises under the Utah Abuse of Personal Identity Act if:

(1) An advertisement is published in which the personal identity of [an] individual is used in a manner which expresses or implies that the individual approves, endorses, has endorsed, or will endorse the specific subject matter of the advertisement; and

(2) Consent has not been obtained for such use from the individual, or if the individual is a minor, then consent of one of the minor's parents or consent of the minor's legally appointed guardian.

Utah Code Ann. § 45-3-3. On its face, this action is similar to, although somewhat broader than, the action for appropriation of one's name or likeness under § 652A and § 652C of the *Restatement.*

Additionally, we note that the defendants contend that the Utah Act does not extend to any use beyond business advertising. The language of the statute does not require such a narrow construction. The statutory language expressly extends to endorsements or approval of a "specific subject matter." The scope of the statute is not confined to endorsements of articles of trade or commercial subjects. The term "advertisement" does not necessarily mean the advertisement only of articles that are bought and sold in ordinary commerce. It might also include endorsements in advertisements pertaining to scientific, religious, or environmental concerns, for example.

were not captioned; the individuals were not identified or their names otherwise used in any way; and the pictures were used only for general illustrative purposes. For all that appears, it was wholly unimportant which workers' pictures were used. *See Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70, 86 (W.Va.1984). There is nothing whatsoever in the complaint that indicates that the use of the plaintiffs' pictures took advantage of any value associated with the plaintiffs' names or likenesses.

 The second reason the complaint fails to state a claim for relief is that the use of the plaintiffs' photograph falls within the "incidental use" doctrine. The incidental use of a person's name or likeness is not, as a matter of law, actionable as an appropriation of a person's name or likeness under either the *Restatement* or the Utah statute. The *Restatement, supra,* § 652C, comment d, states the "incidental use" doctrine as follows:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded.

A number of courts have held that even if an unauthorized use is made of one's name or likeness which does not take advantage of "commercial or other values associated with the name or likeness," the use is, as a matter of law, incidental and

not actionable. *See, e.g., Faloona v. Hustler Magazine, Inc.,* 607 F.Supp. 1341, 1360 (N.D.Tex.1985) *aff'd,* 799 F.2d 1000 (5th Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987); *Fogel,* 500 F.Supp. 1081, 1089; *Nelson v. Maine Times,* 373 A.2d 1221 (Me.1977); *Lawrence,* 299 Md. 697, 475 A.2d 448; *Tropeano v. Atlantic Monthly Co.,* 379 Mass. 745, 749–51, 400 N.E.2d 847, 850–51 (1980); *Crump,* 320 S.E.2d at 86.

The case here is similar to *Tropeano v. Atlantic Monthly Co.,* 379 Mass. 745, 400 N.E.2d 847. In *Tropeano,* the *Atlantic Monthly* had published an article in November, 1976, entitled "After the Sexual Revolution" which dealt with modern sexual and social mores. The plaintiff was not personally mentioned in the article, but she was one of several people shown in a photograph which was published in the magazine to illustrate the article. The court held that the publication of the plaintiff's photograph in the magazine did not appropriate any value of the plaintiff's identity and that the use of the plaintiff's picture was "incidental" and not actionable. 379 Mass. at 749–51, 400 N.E.2d at 850–51.

*Fogel v. Forbes, Inc.,* 500 F.Supp. 1081, is also similar. The plaintiffs were photographed while standing at an airline counter in the Miami International Airport. *Forbes Magazine* published a photograph to illustrate an article dealing with investments and purchases by Latin Americans in the Miami area. The article reported the purchase of large quantities of goods in Miami and their transportation to Latin America for resale at a much higher price. The photograph of the plaintiffs was captioned, *"The Load:* Some Latins buy so much in Miami they've been known to rent an extra hotel room just to store their purchases." 500 F.Supp. at 1084. That use of the photograph was also held to be an incidental use and not an appropriation of the value of the plaintiffs' names.[10]

---

10. Although the plaintiffs do not allege that they objected to being photographed with Senator Hatch, they do argue that they did not consent to the use of their photograph in Senator Hatch's newsletter. To recover for appropria-

tion of one's name or likeness, it is necessary that the "plaintiff ... show that the invasion [of privacy] was without his or her consent" to support a claim, among other things. *Prosser*

Clearly the use of the plaintiffs' names or likenesses was incidental to the purpose of showing Senator Hatch in the company of workers. Other workers' pictures would have sufficed as well. For all practical purposes, the plaintiffs' pictures were wholly fungible with those of any other persons working at the post office.

We hold that a photograph of a person in a public or semi-public place with a candidate for office or a public official is not an endorsement within the meaning of that term as used by the *Restatement,* or by § 45–3–3, and that the use of the photograph was incidental and therefore not actionable.

Affirmed.

HALL, C.J., and PAGE and CHRISTENSEN, District Judges, concur.

HOWE, A.C.J., concurs in the result.

DURHAM, and ZIMMERMAN, JJ., having disqualified themselves, do not participate herein; PAGE and CHRISTENSEN, District Judges, sat.

*and Keeton on the Law of Torts* § 117, at 867 (5th ed. 1984).