195 N.J. Super. 81 (1984)
477 A.2d 1289
JOHN FABER, GERTRUDE FABER AND JOHN FABER AS GUARDIAN OF ERICH FABER, AN INFANT, PLAINTIFFS-RESPONDENTS,
v.
CONDECOR, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 12, 1984.
Decided July 9, 1984.
*82 Before Judges KING, DREIER and BILDER.
Stephen Schnitzer, attorney for appellant.
Rand & Algeier, attorneys for respondents (Gary C. Algeier, of counsel and on the brief).
The opinion of the court was delivered by KING, J.A.D.
*83 This appeal is taken from a jury award of $45,000 for invasion of privacy. The claim was based on the use of the plaintiffs' family photograph for commercial purposes without consent. We find no error and affirm the jury's verdict.
These are the facts. Plaintiff John Faber had been employed by the Eastman Kodak Company for 33 years as a photography consultant. His job involved working with major newspapers and providing technical assistance with news photographs. His work involved considerable traveling; he met many people involved in the photography industry; he was active in news photography organizations, and published books on photography, one of which had been used as a university textbook. He retired on March 1, 1983.
In 1973, while attending a Kodak conference with his wife and eight-year old son Erich, John asked a friend as a personal favor to take a picture of the family. Plaintiffs had a large print of the photograph made which they hung in their living room. They also had the picture printed on 300 Christmas cards.
A Kodak employee saw one of the Christmas cards and wrote to John asking for permission to use the picture in a new publication called "Printing Color Negatives" as an example of the process for correcting a contrast problem. The plaintiffs agreed and signed a release dated January 17, 1974 which expressed their consent to Kodak's use of the picture as follows
For good and valuable consideration, the receipt of which is hereby acknowledged, We [sic] hereby consent that the photograph of John, Gertrude, and Erich Faber, taken by Andy Purdon (Eastman Kodak Company) proofs of which are hereto attached, or any reproduction of the same, may be used by the EASTMAN KODAK COMPANY or assignees, or licensees for the purpose of illustration, advertising, trade or publication in any manner; is consented to.
John explained that he made the decision to allow Kodak to use the photograph because he had been associated with the company for many years, had been treated well, and had viewed it as *84 a gesture of goodwill. He understood that the release was for a one-time use by Kodak.
The photograph appeared in two editions of the publication. The professional photographers' division at Kodak released the publication, which was sold in photography stores and was used by amateur and professional photographers to improve their technique. John admitted that he anticipated that people would copy the photograph in an attempt to process it according to the technique demonstrated.
John was not aware of any unauthorized use of the photograph between 1973 and 1978. However, in 1978, a friend, who was chief of the Newark Star Ledger photographic operation, brought him a picture frame which contained a family tree. The family tree included a picture of John and Gertrude Faber listed as grandfather and grandmother next to pictures of people whom they did not know. According to plaintiff Gertrude, the friend asked John whether he was "moonlighting." John was distressed because the picture had been used without permission, the reproduction was of very poor quality and it gave the appearance that he was endorsing another manufacturer's product, which could jeopardize his job. He felt that his name and face were strongly associated with Kodak. He explained that he was disturbed because those who saw the photograph might assume that he had given permission for its use and that he was being compensated. He also believed that the publication of the picture damaged his credibility in the field of news photography, especially because the picture was of very poor quality.
John then discovered that defendant Condecor had taken the picture from the Kodak publication. He had never given Condecor permission to use the photograph. The day after his friend showed him the picture frame, John went to the New York City manager for Kodak and explained that he had nothing to do with his picture being used in defendant's frames for commercial purposes.
*85 John thereafter discovered that the family's picture was contained in frames being sold locally in flea markets, supermarkets and other stores and in various outlets throughout the country. The picture also was used in Condecor's 1980 and 1981 price catalogues.
In December 1978 John consulted an attorney, who contacted defendant and told it that plaintiffs did not want the photograph used. However, the picture still was being used in frames sold in December 1979, and the picture was in defendant's 1980 and 1981 catalogues.
Young Erich testified that friends in school made fun of him because of the picture and that he became very upset as a result of this teasing. Prior to the picture's appearance, Erich had been voted a patrol leader of his boy scout troop, but after he was teased about the picture he was voted out of the position. The other children referred to him as the "little kid" because he was considerably younger in the pictures being displayed by defendant. At the end of the year in which he lost his position as patrol leader, he quit scouting.
Gertrude testified that John was embarrassed and upset about defendant's use of their picture and that he was concerned that it might lead to trouble with his job. She felt that the picture's appearance disturbed the peace of their family life with both her husband and her son frequently coming home upset, which made her upset. She worked as a real estate associate, and she wondered if people were talking behind her back about the picture.
According to Don Hagmeyer, vice president of sales and marketing for defendant, plaintiffs' picture was used in defendant's five by seven-inch frame. He testified that approximately 239 frames containing plaintiffs' picture were distributed in New Jersey. When he found out that plaintiffs objected to the use of their picture, he summoned the company's art director and asked whether a signed release had been obtained. Hagmeyer explained that defendant's usual policy was to obtain *86 releases before using photographs. Upon being told that no release had been signed, he instructed personnel in charge of manufacturing to remove the inserts of plaintiffs' picture from the frames. He explained that the family-tree promotion was a "one-shot deal" which was a failure, which sales to only three customers. In 1979 defendant grossed $15,500,000, three-percent of which was attributable to the New Jersey's sales of the type of frame in which plaintiffs' picture appeared.
Defendant basically claims that: (1) no ground for recovery for invasion of privacy existed, (2) Gertrude should not have been allowed to testify about Kodak's policy against "moonlighting," (3) various other evidence rulings were erroneous, (4) counsel's comments on summation were improper and (5) the damages were excessive.
As we stated in Bisbee v. John C. Conover Agency, 186 N.J. Super. 335, 339 (App.Div. 1982), "The Restatement of Torts lists the four areas of invasion of privacy as generally including (a) unreasonable intrusion, (b) appropriation of the other's name or likeness, (c) unreasonable publicity given to one's private life and (d) publicity that normally places the other in a false light before the public." See Restatement, Torts 2d, § 562A at 376 (1977). The thrust of plaintiffs' cause of action in this case is set forth in Restatement, supra, § 652C at 380: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy." As Judge Horn said in Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72 (Ch.Div. 1967),
There is little doubt that a person is entitled to relief when his name has been used without his consent, either to advertise the defendant's product or to enhance the sale of an article.
Some illustrations:
Where defendant sold lockets with removable photographs of plaintiff in each one, it was held that plaintiff-actress could recover for this invasion of her privacy. Lane v. F.W. Woolworth Co., 171 Misc. 66, 11 N.Y.S.2d 199 (S.Ct. 1939), affirmed 257 App.Div. 1065, 12 N.Y.S.2d 352 (App.Div. 1939).
[Id. at 77-78].
*87 See also Devlin v. Greiner, 147 N.J. Super. 446, 461-465 (Law Div. 1977) for historical reference to the right of privacy.
Defendant relies on the following comment to § 652C, which states
* * * * * * * *
d. Incidental use of name or likeness.

The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes. [Restatement, supra, comment d. to § 652C at 382-383].
In support of its position that placing plaintiffs' picture in its frames constituted a mere incidental use of their likeness, defendant cites Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 400 N.E.2d 847 (Sup.Ct. 1980). In that case plaintiff sued under a Massachusetts statute allowing a claim for damages where a person's name or picture had been used for advertising or trade purposes. Plaintiff's picture appeared in the Atlantic Monthly in conjunction with an article on "modern sexual and social mores." Id. 400 N.E.2d at 848. The court noted that the article did not mention or identify plaintiff but that she was "merely one of several people shown in an otherwise unrelated photograph used to illustrate the article." Ibid. The court affirmed the dismissal of plaintiff's complaint, concluding that the case involved mere incidental use of plaintiff's picture, id. at 851, and said
... Here the photograph was published in connection with what is apparently a sociological commentary, and not as a means of soliciting sales or in association with an advertisement of any kind. The article or story involved, *88 whether it be viewed as an effort to inform or entertain the readership, is a legitimate, noncommercial use. The fact that the defendant is engaged in the business of publishing the Atlantic Monthly magazine for profit does not by itself transform the incidental publication of the plaintiff's picture into an appropriation for advertising or trade purposes.
[Ibid.].
The facts in the Tropeano case are quite distinguishable from the present case. Here plaintiffs' picture was used with the product as it was offered for sale. It was thus used directly for trade purposes. This use cannot be compared to use of a photograph in a magazine article, as opposed to an advertisement in that magazine.
A case in point is Olan Mills, Inc. of Texas v. Dodd, 234 Ark. 495, 353 S.W.2d 22 (Sup.Ct. 1962). In that case, plaintiff had engaged defendant's photographic services to take her picture which she intended to send to her daughter. Without plaintiff's consent, defendant printed her picture on advertising post-cards which it commercially circulated by mail and gave enlargements of her picture to door-to-door salesmen to use in solicitations. The court noted: "The cards did not mention Mrs. Dodd's name but merely carried her picture, implying an offer to make a picture of like kind and quality for anyone at an agreed price." 353 S.W.2d at 23. The court affirmed recovery on these facts. Id. at 24.
In our view defendant's contention that plaintiffs Fabers' picture was not used for commercial purposes is untenable. In Lane v. F.W. Woolworth Co., 171 Misc. 66, 11 N.Y.S.2d 199 (S.Ct. 1939), affirmed 256 App.Div. 1065, 12 N.Y.S.2d 352 (App. Div. 1939), the court rejected a similar argument urged in defense of plaintiff-actress' suit based on defendant's sale of lockets containing her picture.
What defendant is here contending is that, although plaintiff's photograph had been inserted in the lockets on display, and although the customer, on paying the purchase price of the locket, acquired one with plaintiff's photograph in it, nevertheless defendant was not using the photograph for "advertising purposes or trade purposes" because it had been put in the lockets only "to illustrate the use" thereof, and because there was a "designation on the back of the picture  that it should be replaced with the purchaser's favorite photo". *89 This contention is without force. The photograph was obviously used to bring attention to the lockets on display, to make them more attractive. This is a use for "advertising" and for "trade" purposes. The photograph went along with the locket, it was sold with the locket.
[11 N.Y.S.2d at 200].
On the issue of the scope of consent, the trial judge properly instructed the jury that the release did not "constitute consent or a waiver for use by this defendant." In Canessa v. Kislak, Inc., 97 N.J. Super. 327 (Law Div. 1977), plaintiff Canessa had difficulty finding housing because of his large family. An employee of defendant helped him find a home. Another of defendant's employees contacted a newspaper to see if it would be interested in doing a story on Canessa's plight. The newspaper obtained Canessa's consent to publish the story along with a picture of the family. Defendant then made reprints of the article, upon which it imprinted its commercial trademark and used them for advertisements. Although Judge Lynch stated that "a plaintiff may waive his right of privacy by consent to a publication of his photograph," he rejected defendant's claim of waiver, noting
"If the actual invasion goes beyond the contract, fairly construed, as for example, by alteration of the plaintiff's picture, or publicity differing materially in kind or in extent from that contemplated, or exceeding the authorized duration, there is liability." (Prosser, op. cit., at pp. 850-851).
Many of the cases in which the right of privacy has been protected are instances where plaintiff had consented to his or her photograph being taken in the first instance, but because defendant then used the photograph for a further and different purpose, for its own commercial benefit, it is held that there is no waiver or consent for such latter use. [Citations omitted]. [Id. at 358].
There is no doubt that defendant's use of plaintiffs' picture was not contemplated by the agreement between plaintiffs and Kodak. Plaintiffs' initial consent did not bar its claim against defendant based on its markedly different use of the picture. To the extent that the judge's charge can be construed as removing that issue from the jury, no error occurred. Reasonable minds could not differ with respect to whether plaintiffs' consent to Kodak to use the picture waived their right to object to its use by defendant.
*90 Plaintiffs established a cause of action for invasion of privacy based on defendant's appropriation of their likeness for its benefit. Plaintiffs' testimony concerning their displeasure with the picture's appearance in defendant's frames and the mental distress they suffered established the damage element of their cause of action. Damages may be recovered for invasion of privacy, even if the injury suffered is mental anguish alone. Fairfield v. American Photocopy Equipment Co., 138 Cal. App.2d 82, 291 P.2d 194, 199 (Ct.App. 1955). See also Olan Mills, Inc. of Texas v. Dodd, 353 S.W.2d at 24.
We find defendant's remaining contentions of error to be clearly without merit. R. 2:11-3(e)(1). The amount of the verdict, though perhaps generous, was within the legitimate province of the jury. Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977). While the trial judge personally found the verdict quite high, he properly refused to substitute his judgment for that of the jury. He cited Fairfield v. American Photocopy Equipment Co., supra, for the proposition that particularly in this type of case the assessment of the damages suffered by a plaintiff is best left to the jury.
In Fairfield, 291 P.2d at 196, plaintiff-lawyer sued defendant for invasion of privacy based on its unauthorized use of his name in advertising its photocopy machine. The court rejected the claim that plaintiff should receive only nominal damages and reasoned
... Plaintiff is entitled to compensation for injury to his peace of mind and to his feelings. The recoverable compensation for these items is difficult to determine since they afford no definite criteria for the ascertainment of damages. In a case of this character there can be no direct evidence of the amount of damages sustained, nor the amount of money which will compensate for the injury. The measure of damages therefore is for the trier of fact, and in assessing such damages he is accorded a wide and elastic discretion. [Citation omitted].
[Id. at 198].
The evidence, if believed, established that plaintiffs had suffered considerable embarrassment and emotional upset. John's reaction was intensified because he felt the picture's appearance *91 hurt his credibility in his job and gave the appearance of a conflict of interest. The jury evidently felt that the injury to plaintiffs' feelings was worth substantial damages; we see no basis to interfere with that assessment.
Affirmed.