## Cynthia Staruski v. Continental Telephone Co. of Vermont

[581 A.2d 266]

No. 88-474

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed July 13, 1990

*Parker & Ankuda, P.C.,* Springfield, for Plaintiff-Appellant.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Defendant-Appellee.

**Morse, J.** This tort case presents an issue of first impression in this state: May a person recover for wrongful invasion of privacy when her employer, without her consent, runs an advertisement in publicly circulated newspapers displaying her name and photograph and a text, falsely attributed to her, that praises the employer? The trial court ruled that she may not. We disagree, and accordingly reverse and remand.

In August 1985, Continental Telephone Company of Vermont (Contel) ran a series of advertisements in Vermont newspapers featuring certain of its employees. Plaintiff, a sales and service representative at Contel's office in Springfield, Vermont, was featured in one such ad. The ad included a photograph of the plaintiff smiling broadly, the words "Hi, I'm Cindy Staruski" in large letters beside the photograph, and an accompanying text, attributed with quotation marks to Ms. Staruski, describing her job responsibilities and opining that "it has been exciting and reassuring to know that Continental continues to expand its equipment and services to meet its obligation to serve you."[1]

---

[1] The full text of the advertisement is as follows:
"Hi, I'm Cindy Staruski" Sales/Service Representative
"When you call the Continental Telephone Service Center, and I answer, my responsibility begins. I initiate action on any requests you might have for service.

Upset by Contel's publication of her name and likeness in this manner, plaintiff sued in tort for invasion of privacy.[2]

Three issues of relevance to this appeal were in dispute at trial. First, contrary to plaintiff's testimony, Contel maintained that it had her express or implied consent to publish the ad. The trial judge, however, ruled that plaintiff had not given consent, noting the absence of any evidence that she saw the ad before publication or knew that it would contain text attributed to her, and instructed the jury accordingly. Second, the nature of the tort of invasion of privacy was disputed. Concluding that publication of plaintiff's photograph, name and job description, even without her consent, was permissible—that is, not tortious as a matter of law—the trial court limited her evidence on damages to those flowing from publication of the final paragraph of the advertisement (referred to at trial as the "testimonial" section). As to that paragraph, the court instructed the jury that *its* publication without consent *was* tortious as a matter of law. Third, the question whether a corporation may be liable for punitive damages in these circumstances was contested. The court allowed the jury to decide whether to award punitive damages.

■ The jury reached a verdict for plaintiff of $1,000 in compensatory damages and $3,500 in punitive damages. The trial judge, however, granted defendant's motion for a judgment notwithstanding the verdict (JNOV), on the ground that plaintiff, not being famous, was unable to prove that her name and identity had commercial value. Plaintiff appeals from the JNOV and

---

"As soon as I receive any required billing or directory information, I enter it into my computer terminal. If there are any errors in your account, I work with you directly until it is corrected.

"Another responsibility I have, which I enjoy, is informing you of the latest special features available, such as touch-tone or custom-calling. I know the very real benefits of these features, as well as others, such as optional toll calling plans. And I'm happy to explain them to you.

"I've been with Continental Telephone for over a year and it has been exciting and reassuring to know that Continental continues to expand its equipment and services to meet its obligation to serve you."

The local "special features" listed in the two newspapers differed slightly.

[2] Two other employees of defendant featured in similar ads also brought suit, but their cases settled prior to this appeal.

additionally claims error in the court's ruling limiting the scope of evidence on damages to those flowing only from the "testimonial" portion of the ad. Defendant in turn maintains that the JNOV is warranted and, in the event the JNOV is reversed by this Court, also contests the punitive damages and argues for a new trial on the grounds that the question of consent should have gone to the jury and that the court erred in ruling that the "testimonial" section constituted an invasion of privacy as a matter of law.[3]

We reverse the JNOV, find that both parties were prejudiced by trial errors, and accordingly remand for a new trial.

## I.

"Invasion of privacy" is a term applied to several distinct types of harm. See generally W. Keeton, Prosser and Keeton on Torts § 117 (5th ed. 1984) [hereinafter Prosser and Keeton]. This lawsuit concerns one of these, "the appropriation, for the defendant's benefit or advantages, of the plaintiff's name or likeness." *Id.* at 851. The incidental use of a person's name is not of course grounds for liability. "It is only when [the defendant] makes use of the name to pirate the plaintiff's identity for some advantage of his own . . . that he becomes liable." *Id.* at

---

[3] We note that Contel was not required to file a cross-appeal in order to preserve these claims for our review, since it was content with the final order in the case, namely the JNOV in its favor, and therefore had nothing in the first instance to appeal. See V.R.A.P. 4 (allowing fourteen days from filing of first notice of appeal for filing cross-appeals). We have held to the contrary in a previous decision, see *In re Estate of Hogg*, 147 Vt. 101, 104, 510 A.2d 1323, 1325 (1986), but now overrule that decision.

In *Hogg*, the trial court invalidated an antenuptial agreement, and the estate of one of the parties to the agreement appealed. In reversing and reinstating the agreement, we declined to reach a claim by the other party seeking a new hearing on the agreement's validity in the event the trial court's decision were reversed, on the ground that he failed to file a timely cross-appeal. We provided no rationale for the holding and are unable to provide one now. Even where no cross-appeal has been filed, the opposing party has a full and fair opportunity to rebut the appellee's claims by filing a reply brief. V.R.A.P. 28(c), 31(a). These remarks, of course, do not apply in situations where *both* parties seek to appeal a judgment; in such case, the failure to file a cross-appeal would leave a party without a remedy if the appeal of the first party were dismissed by the Court on motion or for want of prosecution. V.R.A.P. 42.

852; see *Moore v. Big Picture Co.*, 828 F.2d 270, 272, 275 (5th Cir. 1987).

Vermont has no statute providing a cause of action for invasion of privacy and, to date, the tort has been recognized only obliquely in the case law of this state. In *Lemnah v. American Breeders Service, Inc.*, 144 Vt. 568, 574, 482 A.2d 700, 704 (1984), this Court considered two other forms of the tort—unreasonable publicity given to a person's private life and publicity that unreasonably places the person in a false light. In holding that the plaintiff had failed to establish the "publicity" element of these torts, we followed the American Law Institute's Restatement (Second) of Torts (1977), but noted that we were applying only "the law as instructed" since "[t]here was no dispute among the parties that the law as expressed in the Restatement would control," and therefore we would not "address the general question of what elements comprise the tort of invasion of privacy in Vermont." *Id.* at 574 n.1, 482 A.2d at 704 n.1.

In the present case, the trial judge also drew his jury instructions from the Restatement (Second) of Torts, notably § 652C: "One who appropriates to his [or her] own use or benefit the name or likeness of another is subject to liability to the other for invasion of his [or her] privacy." Section 652C restates the rule as it has evolved since the early years of the century in New York and Georgia and as it has since been recognized in the case law or statutes in virtually all jurisdictions. See *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 82 (W. Va. 1984); Prosser and Keeton, at 850–51; Felcher & Rubin, *Privacy, Publicity, and the Portrayal of Real People by the Media*, 88 Yale L.J. 1577, 1581–82 (1979).[4] In the exercise of our power as a common law court, see *Hay v. Medical Center Hospital of Vermont*, 145 Vt. 533, 542–44, 496 A.2d 939, 944–45 (1985), we now

---

[4] Many of the statutes limit the tort to uses of the name or likeness for advertising or for "purposes of trade," Prosser and Keeton, at 851 n.17, 852, while the common law of other states and certainly the Restatement are broader. § 652C, comment b. We do not here consider whether and to what degree the noncommercial appropriation of a person's name or likeness may be tortious in Vermont.

hold that a damage remedy for invasion of privacy by the appropriation of a person's identity, at least when done for commercial purposes, should be available in appropriate circumstances in Vermont as in other states.

## II.

In granting the motion for a JNOV, the trial judge reasoned: "I don't think you can have appropriation by putting in the name and face of a person who has no fame." In our view, this construes the tort too narrowly.

Fame of the person whose identity is appropriated has never been a prerequisite to recovery for invasion of privacy. One of the leading cases establishing a right of action for invasion of privacy by appropriation of likeness, *Pavesich v. New England Life Insurance Co.*, 122 Ga. 190, 217, 50 S.E. 68, 79 (1905), involved the unauthorized use in an advertisement by an insurance company of a photograph of the plaintiff, who "was in no sense a public character." Recent cases applying Restatement (Second) of Torts § 652C also permit recovery although the plaintiff was not famous. For example, in *Tellado v. Time-Life Books*, 643 F. Supp. 904, 909 (D.N.J. 1986), the court held that a publisher may be liable for misappropriation of likeness for using a photograph of the plaintiff, without his permission, in promotional material for a series of books on the Vietnam War. The photograph showed the plaintiff as an anguished soldier in Vietnam, but neither his name nor his face were well known to the public. The cause of action, the court ruled, is not limited to famous individuals.[5]

---

[5] Indeed, some authorities hold that the appropriation for profit of a famous person's name or likeness is not an invasion of privacy but a different tort altogether. See *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866, 868 (2d Cir.) ("in addition to and independent of [the] right of privacy . . . a man has a right in the publicity value of his photograph, *i. e.*, the right to grant the exclusive privilege of publishing his picture"), *cert. denied*, 346 U.S. 816 (1953); *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d at 85 n.6 (distinguishing right of privacy, which "protects individual personality and feelings," from right of publicity, "which remedies the unjust enrichment caused by an unauthorized exploitation of the good will and reputation that a public figure develops in his name or likeness"); Felcher &

Plaintiff was not obligated to prove a specific pecuniary value of her name, photograph and "testimonial," either as a measure of Contel's benefit or of her own damages. Damages are not presumed, however; plaintiff was required to show that she was harmed by defendant's conduct, as her testimony indeed tended to show. The action is similar in this sense to certain defamation actions where plaintiffs must show "actual loss" although they are relieved of the burden of proving pecuniary loss or "special damages." See *Ryan v. Herald Ass'n, Inc.*, 152 Vt. 275, 286, 566 A.2d 1316, 1322 (1989). Thus, for example, in *Faber v. Condecor, Inc.*, 195 N.J. Super. 81, 90–91, 477 A.2d 1289, 1294–95 (App. Div. 1984), the court upheld a jury verdict for a family (not famous) whose privacy was invaded by a manufacturer of picture frames that used the family's photograph without permission in its frames displayed for sale: "Plaintiffs' testimony concerning their displeasure with the picture's appearance in defendant's frames and the mental distress they suffered established the damage element of their cause of action. Damages may be recovered for invasion of privacy, even if the injury suffered is mental anguish alone." See also *Moore v. Big Picture Co.*, 828 F.2d at 276–77; Restatement (Second) of Torts § 652H.

In addition to proving harm to herself, plaintiff also was required to prove a benefit to the defendant, although, as we have noted, a dollar amount need not be established. Comment c to § 652C in the Restatement explains that "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." The evidence in the record amply demonstrates that Contel sought to reap the fruits of plaintiff's prestige and standing as a "happy" employee, as she was portrayed in the ad, despite its protestations that the ad was designed to convey only a "public service" message. Plaintiff's expert testified that this sort of advertising is "one of the most effective kinds," "more valuable than straight advertising saying we give good service." When asked by de-

---

Rubin, *supra*, at 1588 ("portrayals that cause economic injury to well-known people . . . do not rest securely within the right of privacy . . .; their complaint is not that they have received publicity, but that they have failed to receive its benefits").

fendant's counsel why he didn't "print up pictures of anonymous people with a description of a job title . . . and simply do it that way," Contel's public affairs specialist testified: "I guess in a word, credibility. You need, you can't get any place unless you establish credibility, and if we had hired an actor and so on and so forth, there wouldn't have been."

Defendant further argues that its use of plaintiff's name and likeness was "clearly incidental" and therefore not tortious. See Restatement (Second) of Torts § 652C comment d. There are of course incidental uses of people's likenesses in commercial advertising, such as a photograph of a busy street where certain pedestrians may be recognizable, and in such a case there could be no liability. There may also be close cases where the line between tortious appropriation and permissible use is hard to draw. This is not a close case. This ad featured Cynthia Staruski exclusively and attributed the company's advertising copy to her solely because of who she was. The strategy of Contel's campaign was to obtain a commercial benefit—and, perhaps, also provide a public service announcement—from the association of the ad's text with the names and photographs of select employees. There is nothing incidental about plaintiff's appearance in the ad. See *Faber v. Condecor, Inc.*, 195 N.J. Super. at 87–88, 477 A.2d at 1293 (rejecting claim that defendant's use of plaintiffs' photograph in picture frames displayed for sale was a merely incidental use of plaintiffs' likeness).

"In passing upon the propriety of the granting of a motion for judgment n.o.v., V.R.C.P. 50(b), we must view the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence. . . . If there was any evidence fairly and reasonably supporting the nonmoving party's claim, the judgment n.o.v. was improper." *Kinzer v. Degler Corp.*, 145 Vt. 410, 412–13, 491 A.2d 1017, 1018–19 (1985). So viewed, the evidence clearly supports a damage award for the invasion of privacy, and the trial court accordingly erred in granting a JNOV. We cannot simply reinstate the jury's verdict, however, because of other errors at trial.

## III.

Plaintiff asserts that the court defined the tort of appropriation too narrowly during the trial, to her prejudice. On defendant's motion, the court ruled that Contel's use of plaintiff's name, photo and job description in the advertisement was permissible and that plaintiff's evidence of damages would therefore be limited to those flowing from the use of the final "testimonial" paragraph. Plaintiff's counsel disagreed, arguing "that we have a right to prove our damages as to the ads as a whole because the ad as a whole was an invasion of my client's privacy."

Contel first argues that this issue is not preserved for appellate review on the ground that plaintiff never made an offer of proof of specific evidence excluded under the court's ruling. See V.R.E. 103(a)(2). We disagree. Staruski and her co-plaintiffs sought to establish that they feared harassment from irate customers provoked by seeing their names and photographs in the newspaper. To this end, they offered evidence on previous experiences with customers who had had services disconnected. The court cut off this line of questioning directed to one of the co-plaintiffs on the ground (although the record is not entirely explicit) that the proffered evidence went only to harm caused by the permissible portions of the ad (name and photograph) but not to harm caused by the "testimonial" portion. Direct examination of Ms. Staruski followed the court's ruling, and it is evident from the transcript that counsel tried to tailor his questions to the ruling. We therefore believe the claim is properly preserved, and we are unable to say that plaintiff suffered no prejudice from the evidentiary ruling. Aggravating the problem, the judge repeated the point in the jury instructions:

> I therefore instruct you that Continental's publication of the names, photos and job descriptions of these plaintiffs was permitted, even if done without their consent or knowledge. In other words, the headline and first paragraphs of the three advertisements may not be the basis for recovery in this suit by plaintiffs. . . . Finally, the fact that these portions of the advertisements—name and job description—are done in the form of fabricated quotations does

not render them wrongful, or a basis for recovery by plaintiffs. Instead, you are to focus on the last paragraph in each of the advertisements; what has been described as the "testimonial."

■ Both the court's limitation of plaintiff's evidence and the jury instruction are error. While the publication of plaintiff's name and photograph, without more, may or may not have subjected Contel to liability—a question we do not reach—the advertisement as a whole certainly did (viewing the evidence in the light most favorable to plaintiff), and plaintiff is entitled to seek compensation for all harm proximately caused by its publication. See Restatement (Second) of Torts § 652H. We do not believe the ad may be dissected as the trial court proposed; publication of the "testimonial" section is wrongful only because it is attributed to an identifiable person. Moreover, even if severance of the name and photograph were possible, we do not understand why the final paragraph is any more offensive than certain other aspects of the ad. The third paragraph, for example, deemed permissible by the trial court, includes the assertion that plaintiff "enjoys" informing the public of certain telephone features. In our view, that is every bit as much an appropriation of identity as the final paragraph: both are examples of Contel attributing sentiments to plaintiff for its own commercial advantage. Finally, we do not view the quotation marks as "de minimis," as the trial court ruled. They signify what is most indelicate about this ad—the recitation of a credo composed by Contel's management as if it were created and spoken by plaintiff.

Plaintiff was entitled to prove all damages reasonably flowing from the publication of the advertisement; she is therefore entitled to a new trial for this purpose. Since the issues may arise on retrial, we now turn to Contel's assertions of trial error.

## IV.

Contel contends first that the court erred in granting plaintiff's "motion for a directed verdict" on the issue of consent. The relevant evidence may be summarized as follows. Plaintiff testified that she had not seen the ad before it was run in the

newspaper and never consented to its use by Contel. She knew of the campaign to feature employees in Contel's ads, but testified that she understood she would not appear in the ads after a discussion with her supervisor, who opposed the publication of the ads. Defendant offered no evidence that directly contradicted plaintiff's testimony; however, it did offer evidence that it was company policy to circulate the advertisements before publication for their review and approval by the featured employees, although Contel produced neither documentary nor testimonial evidence to prove that this policy had been implemented in plaintiff's case.

█ While the evidence on this issue undoubtedly favored plaintiff, we do not believe that it warranted a ruling as a matter of law. Such rulings, like directed verdicts, should be avoided whenever the evidence fairly supports the claim of the nonmoving party. See *Lillicrap v. Martin*, — Vt. —, —, 591 A.2d 41, 42 (1989). The weight of the evidence, the credibility of the witnesses, and the persuasive effect of their testimony are all matters best left to the determination of the jury. The jury here ought to have been permitted to assess the plaintiff's credibility and consider the likelihood of Contel's concededly unsubstantiated version of events. The court's ruling and jury instruction on consent were therefore in error. The record on retrial, of course, may differ significantly from the one before us, and we cannot predict what rulings may be appropriate given potential differences in evidence.

## V.

Contel next objects to the court's instruction to the jury, referring to the advertisement's final paragraph: "For the employer to publish purported opinions ascribed to the three women constituted appropriation of their right to privacy, unless it was done with their consent." The instruction essentially directed the jury to find that defendant was liable for publication of the final paragraph if done without permission (although the court had earlier denied plaintiff's motion for a directed verdict on liability). Since the final paragraph, as discussed above, should not have been severed from the remainder of the

ad, this precise issue will not resurface on remand; nonetheless, we believe guidance is warranted.

We agree with the gist of the trial judge's instruction, and believe it was flawed only insofar as it was limited to the ad's final paragraph. We hold that Contel's publication of the entire ad featuring plaintiff, unless done with her consent, was wrongful as a matter of law. On the evidence presented at trial, assuming no consent, a reasonable juror could not but conclude that defendant had invaded plaintiff's privacy by appropriating her identity to promote a business advantage. As we said earlier, Contel's claim that the use of her name and likeness was merely incidental is manifestly untenable. Contel also sought, throughout the trial, to convey the impression that its ad was a public service announcement intended only to assist customers and inform the public. Undoubtedly, certain uses of a person's name or likeness, as in the law of defamation, enjoy constitutional protection, but that issue does not seriously arise in this case. The false attribution to plaintiff of defendant's message—even to the extent the message itself serves a public purpose—has scant, if any, legitimate public value. If plaintiff never consented to the use of her name and likeness in this manner, the public was subjected to a false testimonial at plaintiff's expense, and she is entitled to recover for the injury to her privacy.

## VI.

Contel finally challenges the punitive damages award. Its argument is twofold: that the evidence did not support a finding of malice, the necessary predicate for punitive damages, see *Ryan v. Herald Ass'n*, 152 Vt. at 286, 566 A.2d at 1322; and that a corporation may not be subject to punitive damages for the acts of its agents.

In *Shortle v. Central Vermont Public Service Corp.*, 137 Vt. 32, 33, 399 A.2d 517, 518 (1979), this Court stated:

Punitive or exemplary damages may upon proper showing be awarded if the act or acts relied upon are more than wrongful or unlawful. It must be shown that there was actual malice. This may be shown by conduct manifesting

personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights. The fact that the defendant is a corporation does not prevent an award of punitive damages in an appropriate case, but the malicious or unlawful act relied upon must be that of the governing officers of the corporation or one lawfully exercising their authority, or, if the act relied upon is that of a servant or agent of the corporation, it must be clearly shown that the governing officers either directed the act, participated in it, or subsequently ratified it.

(Citations omitted.) In this case, the decision to print the advertisements was made by Darrel Hollinger, at the time a vice president of Contel of Vermont and the "state manager" in Vermont, who, according to his testimony, "had overall responsibility for the operation" throughout the state.[6] Publication of plaintiff's ad was thus ordered by a high-level official, not an unauthorized employee. Under the *Shortle* test, any malice on the part of Hollinger as a "governing officer" may be imputed to the corporation. A corporation may not be shielded from punitive damages in these circumstances. See also *Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1386–87 (9th Cir. 1985); Restatement (Second) of Torts § 909 (1979) (punitive damages may be awarded against principal because of conduct by agent if "agent was employed in a managerial capacity and was acting in the scope of employment").

Furthermore, plaintiff's evidence tended to show that the decision to print the ad was made with knowledge that she and her supervisor objected to its publication. Douglas Munson, the public affairs specialist of Continental Service Corporation who

---

[6] Hollinger's "immediate supervisor" was David Rowley, the president of Continental Telephone Company of Vermont, who was based in Concord, New Hampshire. According to Hollinger, Rowley was also "division manager" for a larger organization, Continental Service Corporation, with headquarters in Atlanta, Georgia; Rowley was "part of the service corporation, which is a support organization that supports all of the companies in each of the jurisdictions and the divisions and states."

wrote the ad, testified that plaintiff had raised concerns with him about appearing in an ad, particularly objecting to the use of her last name. When asked, "Did you consider the concern that she expressed to you to be a real concern?" Munson replied, "Definitely." He relayed her concerns to his supervisors, and was eventually told to proceed with the ad campaign. Munson's testimony continued:

Q. And did he [Munson's immediate supervisor, Donald Barnes] communicate to you that the employees had consented to the use of their last name in these ads?

A. I don't know if he—I can't remember exactly what he did convey. It was basically that we had gotten the go ahead to run the ads.

Q. That "we" meaning you and Don Barnes?

A. Yes, specifically I got my marching orders.

Q. Your marching orders were from your boss, Don Barnes?

A. Yes.

Q. And he received directions from whom?

A. To the best of my knowledge, it would have been from Darrel Hollinger.

Hollinger also testified that he was aware of Staruski's objections.

Q. And what did you do as regards that concern that was raised?

A. Well, my response to it was that we had already initiated the program in a couple of other states. We had had no problems with the approach that we were using. I was aware of no problems that any employee received in either of the other states, and with all the other things that we had to deal with at that time, with a refiling of the rate case and moving of our employees to the service office and trying to convert our Springfield area to digital switching, we just didn't have time to redo something that was already done for us, and it worked well elsewhere, so I said I thought we ought to go ahead with the program as is because, you

know, if anybody didn't want to participate in it, it was my understanding that they could opt out.

. . . .

Q. Did you go back to the employees that voiced the concern and discuss anything with them?

A. No, I asked Art to communicate back, you know, what we had decided, and I didn't talk to any employees myself.

Q. Is it fair to say that you weighed the complaints or the concerns of the employees versus the value of the ad campaign to Continental Telephone Company of Vermont?

A. Oh, I suppose so. I felt the program was a good program.

Viewing the evidence in plaintiff's favor, the testimony tends to show that Contel's management knew that plaintiff objected to the proposed ad but decided to ignore her objections and to carry out the campaign regardless. While Hollinger's testimony refers vaguely to his "understanding" that she "could opt out," the inference may plausibly be drawn from the testimony as a whole that he did not believe she would have that opportunity or that he simply did not take her rights seriously—in short, that in printing the ad he showed "a reckless or wanton disregard" of her rights. See *Shortle,* 137 Vt. at 33, 399 A.2d at 518.

■ There was no error in permitting the jury to award punitive damages.

*The judgment notwithstanding the verdict is reversed and the matter is remanded for a new trial consistent with the directions herein.*