STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Agnes Mitchell    }
Trust    }
    }    Docket No. 47-4-01Vtec
    }
    }

Decision and Order

Appellant Agnes Mitchell Trust appealed from a decision of the Planning Commission of the Town of Huntington denying preliminary plan[1] approval of a ten-lot subdivision. Appellant is represented by Michael Marks, Esq.; the Town is represented by Robert J. Perry, Esq.

The three questions posed by the statement of questions are 1) whether the proposed subdivision meets the standards of the subdivision ordinance because it will not have adverse impacts on wetlands; 2) whether the project site is suitable for the proposed density, as it meets the density requirements of the zoning regulations and does not A adversely impact on@ wetlands; and 3) whether the project can be rejected on the basis of noncompliance with a A goal or concept@ of the municipal development plan.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the Town= s attorney by agreement of the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

As shown in Exhibit 9, Appellant proposes to subdivide a 19.3-acre parcel of land fronting on Main Road near its intersection with Hinesburg Hollow Road. The parcel is roughly triangular in shape, with approximately 673 feet of frontage on Main Road, and extends westerly across a relatively flat and open portion of the property to a wooded portion of the property. A stream referred to as Hollow Brook runs along the northerly property boundary and a Class II wetland occupies approximately the westerly and southerly half of the property. Single-family residences are located along Hinesburg Hollow Road as it approaches Main Road, and across Main Road. Much of the parcel (12.7 acres) is located in the Village zoning district; the 6.6-acre portion of the parcel located in the Residential-Agricultural zoning district is not proposed for any construction.

The parcel is proposed to be developed into nine building lots for single family houses, with a tenth lot near the road containing the common leach fields for the septic systems for the nine building lots. No homeowners= association documents or deed restrictions have been provided under ' 610 regulating the ownership or maintenance of the septic system. The lots are proposed to be served by individual drilled wells, each located on each building lot except that the well to serve Lot 8 is proposed to be located on Lot 2.

A 24-foot-wide private road within a 50-foot wide extension of Lot 10 provides access for the house sites on lots 1, 2, 5, 6, 7, and 8. It includes a rectangular intrusion into Lot 2 approximately 50' x 60' in size that provides a place for vehicles to turn around by executing a three-point turn, but is not a circular turnaround or cul-de-sac. No homeowners= association documents or deed restrictions have been provided under ' 610 regulating the ownership or maintenance of the roadway. Access to the house sites on lots 3, 4, and 9 is by a 16-foot-wide private drive extending from the end of the private road across those three lots, although the right-of-way for that drive continues as 50 feet in width.

The parcel contains a Class II wetland for which Appellants have obtained a Conditional Use Determination from the Vermont Agency of Natural Resources. The Conditional Use Determination allows certain specified uses for the proposed houses, such as their wells, to be located in the buffer area for the wetland. The wetland includes a swale which drains water through a culvert towards Hollow Brook running along the northerly boundary of the property. A larger culvert is proposed in connection with the plans for this property, to include a gravel surface within the culvert to facilitate the passage of amphibians. Three of the proposed house sites are located to the west of the swale and the remaining nine are located to the east. No homeowners= association documents or deed restrictions have been provided regulating compliance with and maintenance of the undisturbed stream buffer, the additional 25-foot building setback, the wetland buffer, the row of shrubs (or fence or stone wall) memorializing the wetland buffer line, and the other ongoing requirements of the Conditional Use Determination.

Travelers from the west along Hinesburg Hollow Road have a view of Camel= s Hump as they approach Main Road; a portion of the area proposed for development would be in the oblique foreground of that view. The property is also visible to travelers from the south as they approach the Lower Village from Huntington Center. Witnesses for the Town testified to this area= s being a > gateway= to the Town; however, such a designation does not appear in the 1995 Town Plan applicable to this application.

The proposal meets the setbacks and one-acre lot sizes required by the zoning ordinance. Building lots 1 through 8 range from 1 acre to 1.4 acres in size. Building lot 9 is 9.4 acres in size, including the wooded upland portion of the site. Lot 10, comprising the road and septic fields, is 1.6 acres in size. Taking into account the locations of the Class II wetlands, the 50-foot-wide wetlands buffer, and the 50-foot-wide stream buffer, each of the building lots other than Lot 1 has a much smaller buildable area and in most cases a smaller useable area than the lot size would suggest. However, nothing in the zoning regulations requires all of the minimum lot size to be useable area. Any final subdivision approval should address whether the use and building limitations of the Conditional Use Determination are included in each deed, and whether a homeowners= association is in any way responsible for the enforcement of those use limitations and for the maintenance of the buffer and buffer memorialization, as well as for the upkeep of the common septic system and road. See ' 610 and 610.1.

The proposal appears to meet the minimum standards for required improvements and design standards required by ' 500 of the subdivision ordinance, except for ' 500.6 which requires a separate approval from both the Planning Commission and the selectboard for a non-circular turnaround as is proposed in this project.

The parties primarily dispute whether the property meets the general planning standards found in ' 400 of the Subdivision Regulations. In particular, the Town opposes the three house sites proposed to be located westerly of the swale and culvert on the property, in a line along the southerly boundary of the brook buffer. Section 400 requires the Planning Commission, and hence this court, to evaluate any application for final subdivision approval in accordance with these standards, and allows the Commission to approve or deny the application, to require modifications of it, or to impose conditions to A mitigate adverse impacts.@ In addition, ' 250 of the Subdivision Regulations directs the Planning Commission to make a determination as to whether the proposed subdivision is A consistent with the objectives@ of the Subdivision Regulations.

Thus, ' 250 allows consideration of the objectives or purposes of the Subdivision Regulations found in ' 120, including ' 120(8) and (9): to insure appropriate development with regard to the natural beauty and topography of the Town, and to A establish controls for the design of developments so that . . . the development along town roads is visually pleasing.@ Further, ' 400 allows consideration of the preservation and protection of existing brooks and other natural features such as wetlands, whether the site is suitable for the proposed density, whether the

proposal retains unrestricted access to deer yards, and whether the proposal is A in compliance with@ the Town Plan, as well as in compliance with the zoning ordinance and other bylaws. ' 400(2), (7), (11) and (4), respectively.

However, as the Town did not cross-appeal[2] any issues, in this de novo proceeding we may only address the issues raised in Appellant= s Statement of Questions with regard to preliminary plan approval. However, nothing in this decision limits the parties= positions or presentations of evidence should the matter proceed to final plan approval, as ' 250 specifically provides that A preliminary plan approval does not imply any guarantee of approval of final subdivision plan@ . We take Appellant= s issues in turn.

With regard to wetlands, the design of the subdivision, including the limitations placed on it by the Conditional Use Determination, shows > due regard= for the preservation and protection of the existing natural feature that is the Class II wetland. ' 400(2). Also with regard to the issue of wetlands, the site is > suitable= for the proposed density, ' 400(7), in the sense of the number of units per acre. The test in these sections is whether the subdivision is an adequate design, not whether it is the best possible design. The regulations do not require minimizing the effect of the project on the wetland. It remains possible that placing the nine units all to the east of the swale would result in less potential for an effect on the wetlands, less potential for an effect on Hollow Brook, and/or less obtrusive visibility of the project from Hollow Brook Road. However, those questions and the question of whether the Planning Commission could require clustering east of the swale as a condition to mitigate any adverse impacts under ' 400, are not before the Court in this appeal.

Appellant= s final question relates to whether the plan can be rejected because it does not comply with a > goal or concept= of the Town Plan[3]. A subdivision proposal can be rejected for failure to comply with the Town Plan, because ' 400(4) allows the Planning Commission to consider whether the proposed subdivision is A in compliance with@ the Town Plan. However, only specific provisions of a plan are enforceable in this way; nonregulatory statements in a town plan are not enforceable in this way unless more specific zoning or subdivision regulations implement those statements. In the present case, the particular statements from the 1995 Town Plan cited by the Planning Commission for rejecting the preliminary plan are insufficiently specific to be used for that purpose, without more specific provisions in the zoning or subdivision regulations with which to interpret[4] them.

It is sometimes difficult to determine whether a specific project is A in compliance with@ a town plan, as town plans may represent general goals and abstract intentions as well as specific plans for development or preservation of specific districts or locations within a town. In the field of local zoning or subdivision regulation, A [a]lthough the plan may recommend many desirable approaches to municipal development, only those provisions incorporated in the bylaws are legally enforceable.@ Kalakowski v. John A. Russell Corporation, 137 Vt. 219, 225-26 (1979). See, In re Molgano, 163 Vt. 25, 30-31 (1994) (under Act 250, zoning bylaws must be used to interpret the meaning of a town plan, to avoid giving A nonregulatory abstractions@ in the town plan the A legal force of zoning laws.@ )

The 1995 Town Plan recommends that A an effort should be made to revitalize the village atmosphere of Huntington= s Lower Village and Huntington Center@ and that A [d]evelopment in these districts should be done in a manner that reinforces the character of the villages.@ The Town Plan, however, contains no specific guidance as to what aspects of development would reinforce the character of the villages, that would assist the Planning Commission or this Court in reaching a conclusion about whether Appellant= s proposed subdivision would affect the character of the villages in any way.

The Planning Commission also relied on three of the four A goals for land use management@ that are A summarize[d]@ on page 3 of the 1995 Town Plan as: 1) [t]o protect and preserve the

historic and scenic features of the Huntington landscape and of its villages; 2) [t]o preserve open space (including farmland), conserve natural resources, and to provide a sound economic basis for the maintenance of those resources; and 3) [t]o encourage an attractive pattern of settlement and good civic design. Nothing in the 1995 Town Plan or the zoning or subdivision regulations appears to define any locations as gateways to the villages, to recommend any particular land uses at the gateways, to recommend the clustering of development along the frontage of a parcel, or to discourage a linear layout of residences along a stream. We cannot conclude that the proposed development fails to be A in compliance with@ the 1995 Town Plan based upon these general and relatively abstract statements in the Town Plan.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that preliminary subdivision approval is GRANTED to this project, concluding this matter in this Court and allowing Appellant to submit its application for final subdivision approval to the Planning Commission. We note for the parties= guidance that the parties will be free raise their arguments regarding deeryards, the viewshed, the Town= s > gateways,= and protection of the stream corridor, as well as wetlands, and to argue for modifications in the final plan, based on the provisions of ' ' 400, 250, and 120, in the proceedings before the Planning Commission on final plan approval. ' 250.

Dated at Barre, Vermont, this 26th day of February, 2002.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1]   On the record at the hearing the Court ruled that all that can be before the Court in this <u>de novo</u> hearing is what was before the Planning Commission, that is, preliminary plan approval and not final subdivision approval. Exhibits 9 and 10 meet the submission requirements for the application.

[2]   The Town argues that it did not cross-appeal any issues because it was satisfied with the Planning Commission's denial of the preliminary subdivision plan. See, <u>e.g.</u>, <u>Staruski v. Continental Tel. Co.</u>, 154 Vt. 568, 571 n. 3 (1990); <u>Valley Realty v. Town of Hartford</u>, 165 Vt. 463, 465 n.2 (1996). However, that principle arose in appeals taken on the record, such as appeals to the Supreme Court from a trial court decision, and can only apply to raising new legal issues. In an on-the-record appeal, an appellee is free to raise any legal arguments, as long as those objections were preserved for appeal at trial, without the need to bring a cross-appeal, because no new evidence will be taken at the appellate level.

On the other hand, in a <u>de novo</u> proceeding, the issues raised by the appellant define the matters on which new evidence may be presented. An appellee remains free to raise new legal arguments in a <u>de novo</u> proceeding, without having to cross-appeal. But in a <u>de novo</u> proceeding, an appellee cannot raise new factual issues unless they are properly brought before the court in a cross-appeal, because the appellant cannot prepare to present or to meet evidence on those new factual issues. Thus, once an appellant has brought an appeal and has stated the issues on appeal, if the town (or any other party) wishes the court to consider <u>evidence</u> on additional issues, additional conditions, or alternative grounds for denial not addressed by the appellant's issues, the Supreme Court has ruled that the town must cross-appeal to bring those issues properly before the court. <u>Village of Woodstock v. Bahramian</u>, 160 Vt. 417, 424 (1993).

[3]  The 1995 Town Plan was presented in evidence. This decision does not address whether a subsequent Town Plan has been adopted, whether a Town Plan is now in effect, or whether any changed Town Plan might apply to a final subdivision application.

[4]  Under Act 250, which requires the District Commission to make an independent determination of whether a development proposal is "in conformance with" a town plan, zoning bylaws are used to interpret the meaning of the town plan. In re Molgano, 163 Vt. 25, 30-31 (1994); similarly, see 2001 amendment to 10 V.S.A.§6086(a)(10), responding to In re Kisiel, 11 Vt.L.Week 401, 404 (2000).